## DREW, SHERIFF OF COOS COUNTY, NEW HAMPSHIRE, v. THAW.

### APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEW HAMPSHIRE.

No. 514.　Argued December 11, 1914.—Decided December 21, 1914.

A State may enact that a conspiracy to accomplish what an individual is free to do shall be a crime.

The New York Penal Law, §§ 580, 583, making an agreement to commit any act for the perversion of justice or the due administration of the laws a misdemeanor if an overt act is committed, may include the withdrawal by connivance of a person from an insane asylum to which he had duly been committed by order of court as a lunatic.

A party to a crime who afterwards leaves the State is a fugitive from justice; and, for purposes of interstate rendition, it does not matter what motive induced the departure.

The purpose of the writ of *habeas corpus* is not to substitute the judgment of another tribunal upon the facts or the law of the matter to be tried.

The Federal Constitution peremptorily requires that upon proper demand the person charged with crime shall be delivered up to be removed to the State having jurisdiction of the crime. There is no discretion allowed nor any inquiry into motives; nothing is said in regard to *habeas corpus* and the technical sufficiency of the indictment is not open.

Questions as to the sufficiency of an indictment charging an admittedly insane person with having committed a crime, are for the courts of the State having jurisdiction of the crime to determine according to the law of that State. They cannot be determined by the courts of another State on *habeas corpus* proceedings in interstate rendition.

The constitutionally required surrender of an identified fugitive from justice on a demand made in due form is not to be interfered with by the summary process of *habeas corpus* upon speculation as to what ought to be the result of a trial in the place where the Constitution provides for its taking place.

THE facts, which involve questions arising out of a demand made by the Governor of one State upon the

Governor of another State for the rendition of a fugitive from justice who had been indicted by the demanding State for conspiracy to effect his own escape from the State Asylum to which he had been committed as a lunatic by order of the court, are stated in the opinion.

*Mr. William Travers Jerome* and *Mr. Franklin Kennedy,* with whom *Mr. James A. Parsons* was on the brief, for appellant:

The State of New York does not claim as a basis for the rendition of the petitioner that any right exists on its part to recover, in interstate rendition proceedings, custody of Thaw on the ground that he is an insane person who has escaped from the custody of the State, his legal guardian; nor that to escape from the State Hospital, after being legally committed thereto, was a crime under the laws of the State of New York.

The petitioner has not been indicted in the State of New York for escaping from the Matteawan State Hospital, nor for a conspiracy to commit a crime.

The indictment is for conspiracy to pervert and obstruct justice and the due administration of the law.

Every element required to warrant interstate rendition of petitioner exists in the case at bar.

The indictment accompanying the demand charges a crime even though it appears therefrom that the petitioner was confined in an insane asylum.

In interstate rendition the good faith or ultimate purpose of the demanding State may not be inquired into.

The indictment is technically correct.

In support of these contentions see: *Appleyard* v. *Massachusetts,* 203 U. S. 222; *Charlton* v. *Kelly,* 229 U. S. 447; *Kentucky* v. *Dennison,* 24 How. 66; *Dow's Case,* 18 Pa. St. 37; *Ex parte Hoffstot,* 180 Fed. Rep. 240; *S. C.,* 218 U. S. 665; *Ex parte Reggel,* 114 U. S. 642; *Guiteau's Case,* 10 Fed. Rep. 161; *Hadfield's Case,* 27 Howell's State Trials

(1800), Case No. 646, p. 1282; *In re Clarke*, 86 Kansas, 539; *Matter of Fetter*, 3 Zabr. 311; *Matter of Voorhees*, 3 Broom, (32 N. J. L.) 145; *Munsey* v. *Clough*, 196 U. S. 364; *People* v. *Cain*, 206 N. Y. 202; *People* v. *Silverman*, 181 N. Y. 240; *Peabody* v. *Chanler*, 13 App. Div. (N. Y.) 159, *S. C.*, affi'd 196 N. Y. 525; *People* v. *Pinkerton*, 17 Hun, 199; *Pettibone* v. *United States*, 148 U. S. 197; *Pierce* v. *Crecy*, 210 U. S. 387; *Roberts* v. *Reilly*, 116 U. S. 80; *State* v. *Anderson*, 1 Hill, 327; *United States* v. *Lawrence*, 4 Cr. C. C. 518; *United States* v. *Ridgeway*, 31 Fed. Rep. 144.

*Mr. P. C. Knox* and *Mr. William A. Stone*, with whom *Mr. Merrill Shurtleff* and *Mr. George F. Morris* were on the brief, for appellee:

Thaw did not escape from guardianship control, but from police control. His commitment to Matteawan the appellate court said was made in the exercise of the police power of the State. *Peabody* v. *Chanler*, 117 N. Y. Supp. 322.

The *parens patriæ* power has been recognized and exercised from time immemorial.

It is a political relationship existing only between sovereign and subject and for the subject's protection.

The confinement of the dangerously insane for the public protection in the exercise of the police power has no relation to the *parens patriæ* power, has its origin in the statutes enacted long subsequent to the recognition of the *parens patriæ* power, and operates in a different field and for a different purpose, the one having in exclusive view the protection of the public, the other the care and protection of the ward.

The *parens patriæ* power is protective, not punitive nor police. It is invoked only to help the helpless and to protect his person and estate. It is a prerogative of sovereignty usually committed to the chancellor. It is a duty the sovereign owes the subject in return for his

allegiance. New York has never exercised it or sought to exercise it, and cannot exercise it in respect to Thaw, a citizen of Pennsylvania.

New York's relation to Thaw was that of a prosecutor, and in the issue joined between that great State and Thaw the stake was Thaw's life. Thaw was acquitted. New York's present relation to him is just the same as to every other person. She may defend her peace against him, her courts having found him dangerously insane, if by his presence in her jurisdiction he menaces her peace.

There can be no purpose of alleging in an extradition proceeding that a ward has escaped from legal guardianship, then that his extradition is sought only to punish him for crime, and finally that the purpose is to have him immediately returned to the alleged guardianship control. If these allegations in any way raise the question of the right of the State of New York to exercise *parens patriæ* control over a citizen of Pennsylvania domiciled within that State, petitioner insists that no such right or power exists.

Appellee must for the purposes of this case be regarded as insane and subject to all the liabilities and entitled to all the privileges which such a status imposes on or gives to him. The authorities of New York cannot play fast and loose here; they cannot have this appellee sane when he escapes from a lunatic asylum, in order that they may supply a necessary intent to an alleged crime, and dangerously insane when they oppose his release.

On the record this man must be regarded as insane, and his extradition must be considered from that viewpoint.

This is not a case in which it is sought (as in *Charlton* v. *Kelly*, 229 U. S. 427), to set up the plea of insanity as a defence to the charge of crime, and to establish the plea by evidence *aliunde* the record. Here the insanity is shown on the face of the record.

Extradition, or interstate rendition, will lie only for

crimes, and this includes misdemeanors, and an act to constitute a crime or misdemeanor must contain the elements and satisfy the requirements that are essential to constitute crimes or misdemeanors at common law. The power of a State to create extraditable crimes is subject to this limitation. Blackstone's Comm., Bk. 4, ch. 1, p. 5.

In construing terms of an article in the Constitution we are to look at the meaning which those terms had at common law, both in the United States and England, at the time of the adoption of the Constitution. *United States* v. *Wilson*, 7 Pet. 160; *Thompson* v. *Utah*, 170 U. S. 343; *Ex parte Bain*, 121 U. S. 1; *West* v. *Gammon*, 98 Fed. Rep. 426.

As to the meaning of "*ex post facto*," see *Carpenter* v. *Pennsylvania*, 17 How. 456; of "pardon," *United States* v. *Wilson*, 7 Pet. 160; *United States* v. *Harris*, 26 Fed. Cas. No. 15,315; of terms in the Fifth, Sixth and Seventh Amendments, *United States* v. *Potter*, 56 Fed. Rep. 83; *Callan* v. *Wilson*, 127 U. S. 540; *Thompson* v. *Utah*, 170 U. S. 343; *United States* v. *Copper Stills*, 47 Fed. Rep. 495; *United States* v. *Gilbert*, 25 Fed. Cas. No. 15,204; *United States* v. *Ayres*, 46 Fed. Rep. 651.

In interstate rendition the papers of the demanding State should show, by competent proof, that the accused is substantially charged with crime against the laws of the demanding State. That is, the papers must charge a crime and must make out a *prima facie* case against the accused in respect to the crime charged; otherwise the rendition of the fugitive must fail. *Roberts* v. *Reilly*, 116 U. S. 80, 95; *Hyatt* v. *Corkran*, 188 U. S. 691, 709; *Appleyard* v. *Massachusetts*, 203 U. S. 222, 228; *Pierce* v. *Creecy*, 210 U. S. 387.

Whether or not a crime has been charged within the foregoing rule and a *prima facie* case duly and properly made out will be examined into on *habeas corpus* in cases of

interstate rendition. *Roberts* v. *Reilly*, 116 U. S. 80, 94; *Ex parte Slauson*, 73 Fed. Rep. 666; *Appleyard* v. *Massachusetts*, 203 U. S. 222, 228; *McNichols* v. *Pease*, 207 U. S. 110; *Robb* v. *Connolly*, 111 U. S. 624, 638; *In re Buell*, 4 Fed. Cas. No. 2102; *United States* v. *Hess*, 124 U. S. 483; *United States* v. *Fowkes*, 49 Fed. Rep. 50.

Petitioner has the constitutional right to demand that this court shall consider and pass upon the question whether or not he has in this proceeding been charged with a crime within the meaning of the Constitution, whether in this respect a *prima facie* case is made out against him. This is not a matter of aid to criminals. It is a safeguard to the liberty of the citizen.

The *sine qua non* of all crimes and misdemeanors at law is a criminal intent. Blackstone, Bk. 4, ch. 2, p. 20; 1 Bishop's New Crim. Law, §§ 206, 430; *Davis* v. *United States*, 160 U. S. 469, 484; *Stokes* v. *People*, 53 N. Y. 164, 179; *People* v. *Powell*, 63 N. Y. 88; *Martin* v. *Goldstein*, 46 N. Y. Supp. 961.

In cases of conspiracy such as this the gist of the crime is the intent. Wright's Law of Conspiracy, Carson's ed., p. 6; Bishop's New Crim. Law, p. 171.

Insane persons are incapable of entertaining a criminal intent, and therefore incapable of committing a crime. Hawkins' Pleas of the Crown, ch. 1, § 1; Hale's Pleas of the Crown, pt. 1, ch. 1; Bishop's New Crim. Law, § 396a.

An indictment and accompanying papers which, on their face, show that the person accused of committing the crime charged is an avowed and adjudged lunatic, who as a matter of law is not criminally responsible, are fatally and substantially defective in interstate rendition proceedings, because they fail to charge a crime within the meaning of the Federal Constitution; and the person so charged is entitled to be set free from any and every custody based upon such insufficient and substantially defective process.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an appeal from a final order discharging the appellee on *habeas corpus*. Thaw was held upon a warrant from the Governor of New Hampshire for his extradition to New York in pursuance of a demand of the Governor of the latter State. He was alleged to be a fugitive from justice and a copy of an indictment found by a New York grand jury accompanied the demand. The indictment alleged that Thaw had been committed to the Matteawan State Hospital for the insane under an order of court reciting that he had been acquitted at his trial upon a former indictment on the ground of insanity and that his discharge was deemed dangerous to public safety. It then alleged that being thus confined, he conspired with certain persons to procure his escape from the hospital and did escape, to the obstruction of justice and of the due administration of the laws. By the New York Penal Law an agreement to commit any act for the perversion or obstruction of justice or of the due administration of the laws is a misdemeanor, if an overt act beside the agreement is done to effect the object. Penal Law, §§ 580, 583.

In the wide range taken by the argument for the appellee it was suggested among other things that it was not a crime for a man confined in an insane asylum to walk out if he could, and that therefore a conspiracy to do it could not stand in any worse case. But that depends on the statute. It is perfectly possible and even may be rational to enact that a conspiracy to accomplish what an individual is free to do shall be a crime. An individual is free to refuse his custom to a shop, but a conspiracy to abstain from giving custom, might and in some jurisdictions probably would be punished. If the acts conspired for tend to obstruct the due administration of the laws the statute makes the conspiracy criminal whether the acts themselves are so or not. We do not regard it as open

to debate that the withdrawal, by connivance, of a man from an insane asylum, to which he had been committed as Thaw was, did tend to obstruct the due administration of the law. At least, the New York courts may so decide. Therefore the indictment charges a crime. If there is any remote defect in the earlier proceedings by which Thaw, was committed, which we are far from intimating, this is not the time and place for that question to be tried.

If the conspiracy constituted a crime there is no doubt that Thaw is a fugitive from justice. He was a party to the crime in New York and afterwards left the State. It long has been established that for purposes of extradition between the States it does not matter what motive induced the departure. *Roberts* v. *Reilly*, 116 U. S. 80; *Appleyard* v. *Massachusetts*, 203 U. S. 222, 226, 227. We perceive no ground whatever for the suggestion that in a case like this there should be a stricter rule.

The most serious argument on behalf of Thaw is that if he was insane when he contrived his escape he could not be guilty of crime, while if he was not insane he was entitled to be discharged; and that his confinement and other facts scattered through the record require us to assume that he was insane. But this is not Thaw's trial. In extradition proceedings, even when as here a humane opportunity is afforded to test them upon *habeas corpus*, the purpose of the writ is not to substitute the judgment of another tribunal upon the facts or the law of the matter to be tried. The Constitution says nothing about *habeas corpus* in this connection, but peremptorily requires that upon proper demand the person charged shall be delivered up to be removed to the State having jurisdiction of the crime. Article 4, § 2. *Pettibone* v. *Nichols*, 203 U. S. 192, 205. There is no discretion allowed, no inquiry into motives. *Kentucky* v. *Dennison*, 24 How. 66; *Pettibone* v. *Nichols*, 203 U. S. 192, 203. The technical sufficiency of the indictment is not open. *Munsey* v. *Clough*, 196 U. S.

364, 373. And even if it be true that the argument stated offers a nice question, it is a question as to the law of New York which the New York courts must decide. The statute that declares an act done by a lunatic not a crime adds that a person is not excused from criminal liability except upon proof that at the time 'he was laboring under such defect of reason as: 1. Not to know the nature and quality. of the act he was doing; or 2. Not to know that the act was wrong.' Penal Law, § 1120. See § 34. The inmates of lunatic asylums are largely governed, it has been remarked, by appeal to the same motives that govern other men, and it well might be that a man who was insane and dangerous, nevertheless in many directions understood the nature and quality of his acts as well, and was as open to be affected by the motives of the criminal law as anybody else. How far such considerations shall be taken into account it is for the New York courts to decide, as it is for a New York jury to determine whether at the moment of the conspiracy Thaw was insane in such sense as they may be instructed would make the fact a defence. *Pierce* v. *Creecy,* 210 U. S. 387, 405; *Charlton* v. *Kelly,* 229 U. S. 447, 462. When, as here, the identity of the person, the fact that he is a fugitive from justice, the demand in due form, the indictment by a grand jury for what it and the Governor of New York allege to be a crime in that State and the reasonable possibility that it may be such, all appear, the constitutionally required surrender is not to be interfered with by the summary process of *habeas corpus* upon speculations as to what ought to be the result of a trial in the place where the Constitution provides for its taking place. We regard it as too clear for lengthy discussion that Thaw should be delivered up at once.

*Final order reversed.*