Ex parte BIRDSEYE.

(District Court, S. D. New York. July 16, 1917.)

No. 119.

1. HABEAS CORPUS ⊚⇒13—GROUNDS OF REMEDY—DETENTION ON EXTRADITION WARRANT.

A person held on an executive warrant for extradition to another state may test the legality of his detention under article 4. § 2, of the federal Constitution by habeas corpus in a federal court.

2. HABEAS CORPUS ⊚⇒30(2)—EVIDENCE—EXTRADITION PROCEEDINGS.

If any one count in an indictment charges a crime under the laws of the state, it is sufficient to sustain extradition proceedings against the accused, when attacked in a habeas corpus proceeding.

3. HABEAS CORPUS ⊚⇒92(2)—SCOPE OF INQUIRY—EXTRADITION PROCEEDINGS.

In habeas corpus proceedings for the discharge of a prisoner held on an extradition warrant, the technical sufficiency of the indictment on which the warrant was issued is not open to question, but is a matter to be determined by the courts of the demanding state.

4. CONSPIRACY ⊚⇒23—DEFINITION.

Conspiracy exists where two or more persons combine and agree together to do an unlawful act, or to do a lawful act by the use of unlawful means.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Conspiracy.]

Petition by Clarence F. Birdseye for writ of habeas corpus to obtain release from detention on a Governor's extradition warrant. Dismissed.

James A. Foley and Charles L. Craig, both of New York City, for relator.

R. H. Jackson, Dist. Atty., of Pittsburgh, Pa., and Robert S. Johnstone, of New York City, for the Commonwealth of Pennsylvania.

MANTON, District Judge. [1] This relator is charged with the crime of conspiracy by an indictment filed in the county of Allegheny, state of Pennsylvania. He contests the right of extradition by Pennsylvania on the ground that various counts of the indictment and the indictment as a whole do not charge a crime against him. The Governor of the state of New York has issued his warrant against this relator and his fellow defendants. He may contest this right through the medium of a writ of habeas corpus, assailing the legality of his detention under the executive warrant. Article 4, § 2, of the federal Constitution provides:

"A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up to be removed to the state having jurisdiction of the crime."

Under this provision an alleged fugitive can be delivered up only: First, if he is charged in one state with treason, felony, or other crime; and, second, he has fled from justice; and, third, that the demand for his delivery to the state wherein he is charged with the crime is made. If either of these conditions is absent, the Constitution affords no warrant for the restraint of the liberty of any person. Pierce v. Creecy, 210 U. S. 387, 28 Sup. Ct. 714, 52 L. Ed. 1113; Roberts v. Reilly, 116 U. S. 80, 6 Sup. Ct. 291, 29 L. Ed. 544.

So the question here is whether this relator, who does not dispute having been in the demanding state, is sufficiently charged with crime by the information or indictment here presented by Pennsylvania; in other words, is the information or indictment sufficient in law as a criminal pleading? For it is obvious that such an objection, if well founded, would entitle the relator to his discharge for it would destroy its effect in charging a crime. Learned counsel for the relator urge that a charge of crime is not alleged sufficiently clear and comprehensive in this indictment so as to permit an intelligent defense, and a bar to a second prosecution. This right to be so charged, is accorded every defendant charged with crime. United States v. Greene (D. C.) 115 Fed. 343; United States v. Cruikshank, 92 U. S. 542, 23 L. Ed. 588.

[2] The indictment here consists of 11 counts. If one of these counts is sufficient to charge a crime, the relator must fail. Commonwealth v. Church, 17 Pa. Super. Ct. 39; Commonwealth v. Gouger, 21 Pa. Super. Ct. 217. The Pennsylvania statute alleged to have been violated by the relator is known as the act of March 31, 1860 (P. L. 413, § 128), and reads:

"If any two or more persons shall falsely and maliciously conspire, and agree to cheat and defraud any person, or body corporate, of his or their moneys, goods, chattels, or other property, or to do any other dishonest, malicious and unlawful act, to the prejudice of another, they shall be guilty of a misdemeanor, and on conviction, be sentenced to pay a fine not exceeding five hundred dollars, and to undergo an imprisonment, by separate or solitary confinement at labor, or by simple imprisonment, not exceeding two years."

And the act of March 31, 1860 (P. L. 433, § 11), further provides:

"Every indictment shall be deemed and adjudged sufficient and good in law which charges the crime substantially in the language of the Act of Assembly prohibiting the crime, and prescribing the punishment, if any such there be, or if at common law, so plainly that the nature of the offense charged may be easily understood by the jury. Every objection to any indictment for any formal defect, apparent on the face thereof, shall be taken by demurrer, or on motion to quash such indictment, before the jury shall be sworn, and not afterward; and every court, before whom any such objection shall be taken for any formal defect, may, if it be thought necessary, cause the indictment to be forthwith amended in such particular, by the clerk or other officer of the court, and thereupon the trial shall proceed as if no such defect appeared."

[3] Counsel for the relator have made a very serious attack upon this indictment. In a very learned brief they have reviewed the authorities at considerable length in the attempt to make good on this attack. But on this application, and particularly in view of the statutes above referred to, the court is called upon only to ascertain if the crime is substantially charged. The technical accuracy of the pleading must be left to the courts of the demanding state. Ex parte Reggel, 114 U. S. 642, 5 Sup. Ct. 1148, 29 L. Ed. 250; Drew v. Thaw, 235 U. S. 439, 35 Sup. Ct. 137, 59 L. Ed. 302; Pierce v. Creecy, 210 U. S. 387, 28 Sup. Ct. 714, 52 L. Ed. 1113; Munsey v. Clough, 196 U. S. 364, 25 Sup. Ct. 282, 49 L. Ed. 515. As was said by Justice Holmes in Drew v. Thaw, 235 U. S. 439, 35 Sup. Ct. 138, 59 L. Ed. 302:

"The most serious argument on behalf of Thaw is that, if he was insane when he contrived his escape, he could not be guilty of crime, while, if he was not insane, he was entitled to be discharged, and that his confinement and other facts scattered through the record require us to assume that he was insane. But this is not Thaw's trial. In extradition proceedings, even when as here a humane opportunity is afforded to test them upon habeas corpus, the purpose of the writ is not to substitute the judgment of another tribunal upon the facts or the law of the matter to be tried. The Constitution says nothing about habeas corpus in this connection, but peremptorily requires that upon proper demand the person charged shall be delivered up to be removed to the state having jurisdiction of the crime (article 4, § 2). Pettibone v. Nichols, 203 U. S. 192, 205 [27 Sup. Ct. 111, 51 L. Ed. 148, 7 Ann. Cas. 1047]. There is no discretion allowed; no inquiry into motives. Kentucky v. Dennison, 24 How. 66 [16 L. Ed. 717]; Pettibone v. Nichols, 203 U. S. 192, 203 [27 Sup. Ct. 111, 51 L. Ed. 148, 7 Ann. Cas. 1047]. The technical sufficiency of the indictment is not open. Munsey v. Clough, 196 U. S. 364, 373 [25 Sup. Ct. 282, 49 L. Ed. 515]. And even if it be true that the argument stated offers a nice question, it is a question as to the law of New York which the New York courts must decide."

In Pierce v. Creecy, 210 U. S. at 401, 28 Sup. Ct. 718, 52 L. Ed. 1113, the court said:

"The counsel for the petitioner disclaim the purpose of attacking the indictment as a criminal pleading, appreciating correctly that the point here is not whether the indictment is good enough, over seasonable challenge, to bring the accused to the bar for trial. Counsel concede that they cannot successfully attack the indictment except by showing that it does not charge a crime. The distinction between these two kinds of attack, though narrow, is clear. But it will not do to disclaim the right to attack the indictment as a criminal pleading and then proceed to deny that it constitutes a charge of crime for reasons that are apt only to destroy its validity as a criminal pleading. There must be objections which reach deeper into the indictment than those which would be good against it in the court where it is pending. We are unable to adopt the test suggested by counsel, that an objection, good if taken on arrest of judgment, would be sufficient to show that the indictment is not a charge of crime. Not to speak of the uncertainty of such a test, in view of the varying practice in the different states, there is nothing in principle or authority which supports it. Of course, such a test would be utterly inapplicable to cases of a charge of crime by affidavit, which was held to be within the Constitution. In the Matter of Strauss, 197 U. S. 324 [25 Sup. Ct. 535, 49 L. Ed. 774]. The only safe rule is to abandon entirely the standard to which the indictment must conform, judged as a criminal pleading, and consider only whether it shows satisfactorily that the fugitive has been in fact, however inartificially, charged with crime in the state from which he has fled."

[4] But the counsel for the relator contend that the indictment does not, in any of its 11 counts, charge the statutory crime of conspiracy to cheat and defraud, and that therefore the indictment charges no crime whatever which warrants holding the relator for extradition. A conspiracy, at common law is a much broader offense than that provided by statute. Conspiracy has been so often defined as a case where two or more persons combine and agree together to do an unlawful act, or to do a lawful act by the use of unlawful means. This is the substance of the offense under the Pennsylvania statute. Relator says that the indictment fails to set forth the elements of the crime sought to be charged, and says that it does set forth a number of overt acts which are mere surplusage. Many authorities are cited for the proposition that an indictment charging conspiracy and fraud must set forth the acts which the accused is claimed to have agreed to commit, and which, if committed, would constitute a criminal transaction. Such was the rule laid down in United States v. Hess, 124 U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516; United States v. Cruikshank, 92 U. S. 542, 23 L. Ed. 588; and United States v. Carll, 105 U. S. 611, 26 L. Ed. 1135.

This indictment alleges that:

The defendants "falsely and maliciously conspired and agreed together to cheat and defraud the Pittsburgh Life & Trust Company, a body corporate, of its goods, moneys, chattels, and other property and other dishonest, malicious, and unlawful acts, then and there to do to the prejudice of the said Pittsburgh Life & Trust Company with intent in them then and thereby to defraud the said Pittsburgh Life & Trust Company, contrary to the form of the statute," etc.

The various counts of the indictment, 11 in number, set forth the commission of acts, sufficient to charge a crime. After alleging in the first part of the indictment (count 1) the statutory conspiracy, it then charges that the defendants caused the board of directors to be supplanted by a board of dummy directors, and that they then caused the assets of the Pittsburgh Life & Trust Company to be exchanged for questionable and inadequate properties, and this while the dummy board of directors were without sufficient, or any knowledge of the true value of the assets of the Pittsburgh Life & Trust Company so disposed of. It alleges that the defendants profited by reason thereof, and that the various acts were done through a false and malicious conspiracy and agreement together to cheat and defraud the Pittsburgh Life & Trust Company. In this way, it is charged in the indictment, the Pittsburgh Life & Trust Company was looted. How this was accomplished is set forth in considerable detail.

All this, if true, would charge a crime under the Pennsylvania statute. The indictment is inartificially drawn, but it must be recalled that it is subject to amendment by the trial court of the demanding state. Under the rule referred to above, it is sufficient if the substance of the indictment charges a crime. The form of the indictment may be bad, or its subdivision into various counts may be bad, but if the power remains with the court of the demanding state to correct this defect, the rule laid down in the cases of Drew v. Thaw and Pierce v. Creecy, supra, must control, and the defendants are subject to extradition under

the Constitution and laws of the United States. It is the province of the state where the crime was committed to declare what its laws are and to .determine that the particular acts on the part of the offender constitute a violation of the criminal law of that state. Commonwealth v. Supt. of County Prison, 220 Pa. 401, 69 Atl. 916, 21 L. R. A. (N. S.) 939.

For these reasons, the writ must be dismissed, and the relator held for extradition.