JULIUS KELLER, JR., Respondent, *v.* J. FRANK BUTLER, Appellant.

**Malicious prosecution — complaint — allegation of criminal proceedings instituted in another State against plaintiff and that Governor of this State refused to honor request for extradition does not state cause of action.**

In an action for malicious prosecution it is essential that the plaintiff allege that the criminal proceedings instituted by the defendant have terminated in the plaintiff's discharge or acquittal as the result of a judicial determination.

Accordingly, a complaint in malicious prosecution which alleges that criminal proceedings were instituted against the plaintiff, a resident of this State, in the State of Florida, and that the Governor of this State refused to honor a requisition for the extradition of the plaintiff, the defendant in the criminal proceedings, does not allege a good cause of action, for the allegation that the Governor refused to honor the requisition is not the equivalent of an allegation that the criminal proceedings terminated favorably to the plaintiff; the Governor's action is not a judicial determination of the innocence of the plaintiff.

YOUNG and LAZANSKY, JJ., dissent, with memorandum.

APPEAL by the defendant, J. Frank Butler, from an order of the Supreme Court, made at the Westchester Special Term and entered in the office of the clerk of the county of Putnam on the 6th day of December, 1926, denying defendant's motion to dismiss the complaint under rule 106 of the Rules of Civil Practice, on the ground that it fails to state facts sufficient to constitute a cause of action.

*Harold L. Allen* [*Curt von Boetticher, Jr.,* with him on the brief], for the appellant.

*Eugene S. Bibb* [*John Marx* with him on the brief], for the respondent.

HAGARTY, J. The plaintiff claims damages resulting from malicious prosecution.

The material facts alleged in the complaint are that on or about the 23d day of June, 1926, in Dade county, Fla., the defendant, with malicious intent and without reasonable or probable cause, falsely charged the plaintiff with the crime of grand larceny, and

that, as a result of that charge, a criminal information and a warrant for the plaintiff's arrest were issued by the district attorney of that county; that thereafter, at the instance of the defendant, acting maliciously and without any reasonable or probable cause whatsoever, " application was made to the Governor of the State of Florida for a requisition for the said plaintiff, directed to the Governor of the State of New York, wherein plaintiff was then and still is residing, which requisition and request to extradite the plaintiff was thereafter made by the Governor of the State of Florida to the Governor of the State of New York. That thereafter the defendant falsely, maliciously and without any reasonable or probable cause whatsoever, procured a capias or warrant for the arrest of the plaintiff in the State of New York, upon the aforesaid requisition so issued by the Governor of the State of Florida, and caused the plaintiff to be taken into custody in the City of New York, as an alleged fugitive from justice of the State of Florida * * *." It is then alleged that, after duly considering said requisition and request, the Governor of the State of New York duly declined and refused to honor said requisition and request for the extradition of the plaintiff to the State of Florida to answer said false charges, and dismissed the proceedings for the extradition of the plaintiff, and discharged him. Then follows an allegation that the proceedings have been wholly ended and determined in favor of the plaintiff. There is no allegation that the proceedings in the State of Florida have been dismissed, and we must, therefore, assume that they are still pending against the plaintiff.

The necessary elements which must be alleged in a complaint reciting a cause of action for malicious prosecution are, (1) that the proceedings complained of were instituted by the defendant, (2) without probable cause, (3) with malice, and (4) that the proceedings complained of have terminated in the plaintiff's discharge or acquittal. (*Anderson* v. *Dyer*, 188 App. Div. 707; *Burt* v. *Smith*, 181 N. Y. 1.) The complaint, concededly, is sufficient, in so far as it satisfies the first three requisites of the rule.

The sole question, therefore, before this court is whether or not the dismissal of the extradition proceedings by the Governor of New York, and the discharge of the plaintiff thereunder, is a final determination of the proceedings, described in the complaint, in favor of the plaintiff, justifying this action.

The termination of the proceedings complained of must be the result of a judicial determination. This rule is concisely expressed in the opinion of Judge HISCOCK in *Halberstadt* v. *New York Life Ins. Co.* (194 N. Y. 1, 10) as follows: " From all of these authorities added to others which are more familiar I think two rules fairly

may be deduced. The first one is that where a criminal proceeding has been terminated in favor of the accused by judicial action of the proper court or official in any way involving the merits or propriety of the proceeding or by a dismissal or discontinuance based on some act chargeable to the complainant as his consent or his withdrawal or abandonment of his prosecution, a foundation in this respect has been laid for an action of malicious prosecution. The other and reverse rule is that where the proceeding has been terminated without regard to its merits or propriety by agreement or settlement of the parties or solely by the procurement of the accused as a matter of favor or as the result of some act, trick or device preventing action and consideration by the court, there is no such termination as may be availed of for the purpose of such an action. The underlying distinction which leads to these different rules is apparent. In one case the termination of the proceeding is of such a character as establishes or fairly implies lack of a reasonable ground for his prosecution. In the other case no such implication reasonably follows. (Townshend on Slander, section 423.)" The *Halberstadt* case was followed in *Weglein* v. *Trow Directory, P. & B. Co.* (152 App. Div. 705), where this court had under consideration a case in which the prior termination in plaintiff's favor was alleged to have been his discharge by a magistrate, followed by an indictment on the same charge. It was there held that the discharge was insufficient because the hearing did not involve the merits.

In my opinion, the disposition of the charges involved in this case does not meet the requirements of the rule enunciated by the Court of Appeals that a part of the foundation of an action for malicious prosecution is the termination of the proceeding in favor of the accused by judicial action of the proper court or official in any way involving the merits or propriety of the proceeding or by a dismissal or discontinuance based on some act chargeable to the complainant, as his consent or withdrawal or abandonment of his prosecution.

Neither appellant nor respondent has attempted to help us in determining the effect or result of extradition proceedings. Nothing is said by either of them in his brief concerning the powers or duties or obligations of the executives in these proceedings. In *Roberts* v. *Reilly* (116 U. S. 80) we find a very illuminating discussion of the subject of extradition in the opinion of the court written by Mr. Justice MATTHEWS. The appeal in that case involved the correctness of a decision by a District Court in dismissing habeas corpus proceedings after the appellant, Roberts, had been held by the State of Georgia for extradition upon the requisition of the Governor of New York. It was there held that a person who,

having committed, within a State, an act which by its laws constitutes a crime, is, when found without the State and within the territory of another State or Territory, a fugitive from justice within the meaning of that term as used in the Constitution of the United States, when the former State seeks him to subject him to criminal process to answer therefor. The constitutional provision is that a person charged with crime, who shall flee and be found in another State, shall, on demand of the executive authority of the State from which he has fled, be delivered up for removal to the State having jurisdiction of the crime (Art. IV, § 2, clause 2), but that there is no express grant to Congress of legislative power to execute this provision, and it is not, in its nature, self executing; and the court goes on to say: " A contemporary construction, contained in the act of 1793, 1 Stat. 302, ever since continued in force, and now embodied in §§ 5278 and 5279 of the Revised Statutes, has established the validity of its legislation on the subject. ' This duty of providing by law,' said Chief Justice TANEY, delivering the opinion of the court in *Kentucky* v. *Dennison,* 24 How. [U. S.] 66, 104, ' the regulations necessary to carry this compact into execution, from the nature of the duty and the object in view, was manifestly devolved upon Congress; for, if it was left to the States, each State might require different proof to authenticate the judicial proceeding upon which the demand was founded; and *as the duty of the Governor of the State, where the fugitive was found, is, in such cases, merely ministerial, without the right to exercise either executive or judicial discretion,* he could not lawfully issue a warrant to arrest an individual without a law of the State or of Congress to authorize it.' " (Italics mine.)

It was further held that the remedy of one so arrested was to invoke the judgment of the judicial tribunals, whether of the State or of the United States, by the writ of habeas corpus, to determine the lawfulness of his arrest and imprisonment. Since the act of Congress (Rev. Stat. § 5278) makes it the duty of the executive authority of the State to which such person has fled to cause the arrest of the alleged fugitive from justice whenever the executive authority of any other State demands the arrest of such fugitive and produces a copy of the indictment, or affidavit, made before a magistrate of any State, then it must appear to the Governor of the State to whom such a demand is made, before he can lawfully comply with it, *first,* that the person demanded is substantially charged with a crime against the laws of the State from whose justice he is alleged to have fled, by an indictment or an affidavit, certified as authentic by the Governor of the State making the demand, and *second,* that the person demanded is a fugitive from the justice of the State, the executive authority of which makes the

demand. It was held by the court that the first of these prerequisites is a question of law, always open to judicial inquiry, and that the second is a question of fact, to be decided by the Governor of the State upon whom the demand is made.

I am unable to reconcile the statement in *Roberts* v. *Reilly* (*supra*), that whether or not a party is a fugitive from justice is a question to be decided by the Governor, with the statement that the duty of the Governor is purely ministerial. Ministerial duties do not involve questions of fact nor do they permit of the exercise of discretion. All that the Governor had to determine was (1) whether the plaintiff here had been charged with a crime in the demanding State, which determination, as stated in *Roberts* v. *Reilly* (*supra*), involved a question of law, and (2) whether or not he was a fugitive from the justice of that State, which, as stated in the same case, involved a question of fact. But, in any event, neither question touched the actual guilt or innocence of the plaintiff here. The malicious prosecution, if any, had its origin in the State of Florida when the defendant made the charge and induced the issuance of the warrant of extradition. It was not concluded in the plaintiff's favor by the determination of the Governor of this State. The Supreme Court of the United States has specifically held that the question of the criminal liability of the accused is not involved in extradition proceedings. When Harry Thaw escaped from the insane asylum in New York and sought refuge in the State of New Hampshire, he was arrested under a warrant issued by the Governor of New Hampshire, and held for extradition to New York. In habeas corpus proceedings a final order was made discharging him from custody. That order was reversed by the United States Supreme Court in *Drew* v. *Thaw* (235 U. S. 432). The law is stated briefly in the opinion written by Mr. Justice HOLMES, from which I quote the following: " The most serious argument on behalf of Thaw is that if he was insane when he contrived his escape he could not be guilty of crime, while if he was not insane he was entitled to be discharged; and that his confinement and other facts scattered through the record require us to assume that he was insane. But this is not Thaw's trial. In extradition proceedings, even when as here a humane opportunity is afforded to test them upon habeas corpus, the purpose of the writ is not to substitute the judgment of another tribunal upon the facts or the law of the matter to be tried. The Constitution says nothing about habeas corpus in this connection, but peremptorily requires that upon proper demand the person charged shall be delivered up to be removed to the State having jurisdiction of the crime. Article 4, § 2. *Pettibone* v. *Nichols*, 203 U. S. 192, 205. There is no discretion allowed, no

inquiry into motives. *Kentucky* v. *Dennison*, 24 How. [U. S.] 66; *Pettibone* v. *Nichols*, 203 U. S. 192, 203. The technical sufficiency of the indictment is not open. *Munsey* v. *Clough*, 196 U. S. 364, 373. And even if it be true that the argument stated offers a nice question, it is a question as to the law of New York which the New York courts must decide. The statute that declares an act done by a lunatic not a crime adds that a person is not excused from criminal liability except upon proof that at the time ' he was laboring under such defect of reason as: 1. Not to know the nature and quality of the act he was doing; or 2. Not to know that the act was wrong.' Penal Law, § 1120. See § 34. The inmates of lunatic asylums are largely governed, it has been remarked, by appeal to the same motives that govern other men, and it well might be that a man who was insane and dangerous, nevertheless in many directions understood the nature and quality of his acts as well, and was as open to be affected by the motives of the criminal law as anybody else. How far such considerations shall be taken into account it is for the New York courts to decide, as it is for a New York jury to determine whether at the moment of the conspiracy Thaw was insane in such sense as they may be instructed would make the fact a defence. *Pierce* v. *Creecy*, 210 U. S. 387, 405; *Charlton* v. *Kelly*, 229 U. S. 447, 462. When, as here, the identity of the person, the fact that he is a fugitive from justice, the demand in due form, the indictment by a grand jury for what it and the Governor of New York allege to be a crime in that State and the reasonable possibility that it may be such, all appear, the constitutionally required surrender is not to be interfered with by the summary process of habeas corpus upon speculations as to what ought to be the result of a trial in the place where the Constitution provides for its taking place. We regard it as too clear for lengthy discussion that Thaw should be delivered up at once."

So in this case, the question of the plaintiff's guilt or innocence must be determined in the State of Florida. A different holding would involve the possibility of a recovery here and a subsequent conviction of the plaintiff of the crime charged, the malicious prosecution of which the plaintiff seeks to make the basis of this action.

The order should be reversed upon the law, with costs, and the complaint dismissed, with costs.

KELLY, P. J., and MANNING, J., concur; YOUNG, J., with whom LAZANSKY, J., concurs, dissents in separate memorandum.

YOUNG, J. (dissenting). The complaint states that the Governor of Florida made request of the Governor of New York for the

extradition of plaintiff charged in Florida with having obtained money under false pretenses. It does not appear that plaintiff has been indicted for such crime.

Thereafter, plaintiff was arrested in the State of New York upon a warrant issued here and was taken before a Magistrate's Court in the city of New York where he gave a bond for his timely appearance if extradition was granted. Subsequently, there was a hearing before the Governor of the State of New York upon the application for extradition, and the application was denied, the proceeding dismissed and plaintiff discharged. Thereupon, plaintiff was also discharged by order of the Magistrate's Court.

It appears, therefore, from the complaint that the plaintiff was arrested in a criminal proceeding instituted by the defendant who invoked the authority of the Governor of the State of New York upon the charge that plaintiff was a fugitive from justice, and that such proceeding has been terminated in favor of plaintiff by judicial action, and he has been discharged by the Governor of this State and by the Magistrate's Court which issued the warrant upon which he was arrested.

Whether plaintiff fled from justice is not necessarily involved in the question of his guilt or innocence of the charge against him in Florida.

In my opinion, the complaint states a cause of action.

LAZANSKY, J., concurs.

Order denying motion to dismiss complaint reversed upon the law, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.