584 F.2d 858
 STATE ex rel. Clark A. BAILEY, Appellant,
v.
Charles SHEPARD, M. D., Medical Director, Minnesota Security
Hospital, and Attorney General of the State of
Minnesota, Warren R. Spannaus, Appellees.
 No. 78-1392.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 2, 1978.
Decided Oct. 6, 1978.
 
 Donald H. Nichols, Nichols, Kressel & Johnson, Minneapolis, Minn., for appellant.
 Warren R. Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen. and Craig Forsman, Sp. Asst. Atty. Gen., St. Paul, Minn., for appellees.
 Before HEANEY, STEPHENSON and HENLEY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Clark A. Bailey appeals from the district court[1] order denying his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. We affirm.
 
 
 2
 The case arises from the December 18, 1976 sexual assault, kidnapping and ultimate murder of thirteen-year old Lo Ann Erickson, a resident of Minneapolis, Minnesota, whose body was discovered in a wooded area near Fertile, Iowa on December 23, 1976.
 
 
 3
 On April 14, 1977 petitioner pled guilty in Minnesota state court to charges of criminal sexual conduct in the first degree, Minn.Stat.Ann. § 609.342, and kidnapping, Minn.Stat.Ann. § 609.25. On May 18, 1977 he was sentenced to 0 to 20 years on the former charge and 0 to 40 years on the latter charge, the sentences to run consecutively.
 
 
 4
 On May 6, 1977, an information was filed in Worth County, Iowa, charging petitioner with murder in violation of Iowa Code Ann. § 690.1 and § 690.2.
 
 
 5
 On July 6, 1977 the Governor of Iowa demanded petitioner's extradition on the murder charge under the provisions of the Uniform Criminal Extradition Act, Minn.Stat.Ann. §§ 629.01 .404. On July 11, 1977, pursuant to a Minnesota state district court stay of execution of sentence, the Hennepin County Probate Court found that petitioner was a psychopathic personality, Minn.Stat.Ann. § 526.09, and ordered him committed to the Minnesota Security Hospital. The court specifically found, however, that petitioner was not mentally ill within the meaning of Minn.Stat.Ann. §§ 253A.01 .21, the Minnesota Hospitalization and Commitment Act.
 
 
 6
 On July 13, 1977 a rendition warrant was issued for petitioner's extradition to Iowa. On July 25, 1977 an extradition hearing was held, but was continued until August 1, 1977, at which time the extradition was opposed. A petition for a writ of habeas corpus was filed in Minnesota state court on August 8, 1977. After a hearing, the petition was denied and the decision was affirmed by the Minnesota Supreme Court on December 30, 1977. State v. Bailey, Minn., 262 N.W.2d 406 (1977).
 
 
 7
 On January 24, 1978 the instant petition for a writ of habeas corpus was filed in the United States District Court for the District of Minnesota. The case was referred to a United States Magistrate, who recommended that the petition be denied without further proceedings. The district court adopted the magistrate's report and recommendation by order filed April 6, 1978. Petitioner filed a timely notice of appeal.
 
 
 8
 Petitioner challenges his extradition on the following grounds: (1) his transfer to Iowa for trial would violate constitutional protections against double jeopardy; and (2) his proposed extradition is unlawful because the exclusive way for Iowa to obtain custody over him is pursuant to the Interstate Agreement on Detainers ("the Agreement")[2] and not pursuant to the Uniform Criminal Extradition Act.
 
 
 9
 When a person seeks to challenge his proposed extradition in a habeas corpus action brought in a federal court in the asylum state, the issues open for review are extremely limited. The general rule is derived from Drew v. Thaw, 235 U.S. 432, 35 S.Ct. 137, 59 L.Ed. 302 (1914), in which Mr. Justice Holmes wrote:
 
 
 10
 When, as here, the identity of the person, the fact that he is a fugitive from justice, the demand in due form, the indictment by a grand jury for what it and the governor (of the demanding state) allege to be a crime in that state, and the reasonable possibility that it may be such, all appear, the constitutionally required surrender is not to be interfered with by the summary process of Habeas corpus upon speculations as to what ought to be the result of a trial in the place where the Constitution provides for its taking place.
 
 
 11
 Id. at 440, 35 S.Ct. at 139.
 
 
 12
 Accordingly, our inquiry is limited to the following questions: (1) was the crime committed in the demanding state?; (2) is the person in custody the person charged with the crime?; (3) was the fugitive in the demanding state at the time the alleged crime was committed?; and (4) are the extradition papers in proper form? Compare Price v. Pitchess, 556 F.2d 926, 928 (9th Cir.), Cert. denied, 434 U.S. 965, 98 S.Ct. 504, 54 L.Ed.2d 451 (1977), and United States ex rel. Tyler v. Henderson, 453 F.2d 790, 793 (5th Cir. 1971), With Sanders v. Conine, 506 F.2d 530, 532 (10th Cir. 1974).
 
 
 13
 Under these test, it is clear that petitioner's double jeopardy claim cannot be litigated in a habeas corpus proceeding in a federal court in the asylum state. It is well established that federal constitutional challenges to prospective state criminal incarceration must first be litigated in the courts of the demanding state. See, e. g., Sweeney v. Woodall, 344 U.S. 86, 90, 73 S.Ct. 139, 97 L.Ed. 114 (1952); Price v. Pitchess, supra, 556 F.2d at 928; United States ex rel. Tyler v. Henderson, supra, 453 F.2d at 793; Woods v. Cromvich, 396 F.2d 142, 143 (5th Cir. 1968); United States ex rel. Tucker v. Donovan, 321 F.2d 114, 116 (2d Cir. 1963), Cert. denied sub nom., Tucker v. Kross, 375 U.S. 977, 84 S.Ct. 496, 11 L.Ed.2d 421 (1964); Sutherland v. Love, 359 F.Supp. 983, 985 (E.D.Ark.1973).
 
 
 14
 Petitioner's claim involving the Agreement presents a closer question. If, as petitioner alleges, he is being threatened with extradition under a statute which does not apply to him, then it is arguable that the extradition papers may not be in proper form and that the claim is properly raised in this proceeding.
 
 
 15
 But assuming petitioner's claim is cognizable in this proceeding, we find the claim to be without merit. We begin by noting that his claim is essentially one involving an interpretation of state statutes. In a federal habeas corpus proceeding, a federal court is bound by state court interpretations of state criminal statutes unless a federal claim is involved. See, e. g, Olson v. Tahash, 344 F.2d 139, 141 (8th Cir.), Cert. denied,382 U.S. 858, 86 S.Ct. 113, 15 L.Ed.2d 96 (1965). Accordingly, absent a claim arising under federal law, the decision of the Minnesota Supreme Court in petitioner's state habeas corpus action would be binding on us.
 
 
 16
 The only arguable question of federal law here is that petitioner's claim involves an interpretation of an interstate compact (the Agreement) to which Congress has consented under Article I, section 10, clause 3 of the Constitution. See 63 Stat. 107 (1949), Codified at 4 U.S.C. § 112(a). The question whether such an issue is a question of federal law for purposes of 28 U.S.C. § 2254(a)[3] is a difficult one. In view of its complexity, the lack of precedent,[4] and the parties' failure to brief the issue, we decline to decide the question at this time. Rather, we assume, solely for the purpose of resolving this appeal, that an issue involving an interpretation of the Agreement is a question of federal law.[5]
 
 
 17
 Petitioner's claim, in essence, is that the Agreement operates as the exclusive method by which one state can obtain custody of a person incarcerated under a judgment of conviction in another state. We reject this contention on the basis of the principles enunciated in the Supreme Court's recent decision in United States v. Mauro, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). In Mauro, the Court held that a federal writ of habeas corpus Ad prosequendum is not a "detainer" within the meaning of the Agreement. The Court emphasized the antiquity of the writ and the fact that the writ does not create the same dangers as detainers. Both reasons would apply with equal force to the use of extradition proceedings between states.
 
 
 18
 The duty of states to extradite persons to other states is rooted in Article IV, section 2 of the Constitution and thus it can be assumed that the drafters of the Agreement were aware of the use of extradition procedures and that when they used the word "detainers," they meant something quite different. Cf. United States v. Mauro, supra, 98 S.Ct. at 1847.
 
 
 19
 More importantly, the use of extradition warrants does not create the hazards to prisoners which the Agreement was designed to prevent. The central problem with detainers was that they could be lodged against a prisoner and remain there for a very long time without any action being taken upon them. This could substantially impair a prisoner's privileges and opportunities for rehabilitation. Id. at 1846-47. Thus, the Agreement was designed to insure Expeditious disposition of charges underlying a detainer. Id. Unlike detainers, and like the federal writ of habeas corpus Ad prosequendum, an extradition warrant is a demand for Immediate custody of a prisoner to stand trial on outstanding charges. This demand for immediate custody tends to insure the expeditious disposition of outstanding charges and simply does not create the kinds of problems which the Agreement was enacted to solve. Accordingly, we conclude that the Agreement does not prevent the use of traditional extradition procedures, at least where no detainer has been lodged in connection therewith. Id. at 1847-49.
 
 
 20
 The order of the district court is affirmed.
 
 
 
 [1]
 The Honorable Harry H. McLaughlin, United States District Judge for the District of Minnesota
 
 
 [2]
 Both Minnesota and Iowa are parties to the Agreement. See Minn.Stat.Ann. § 629.294; Iowa Code Ann. § 759 A.1
 
 
 [3]
 The section provides:
 The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
 
 
 [4]
 Compare League to Save Lake Tahoe v. Tahoe Regional Planning Agency, 507 F.2d 517 (9th Cir. 1974), Cert. denied sub nom., Raley v. League to Save Lake Tahoe, 420 U.S. 974, 95 S.Ct. 1398, 43 L.Ed.2d 654 (1975) (jurisdiction under 28 U.S.C. § 1331(a)) With United States ex rel. Frisbee v. Rapone, 449 F.Supp. 509, 512 n. 3 (E.D.Pa.1978) (dictum)
 
 
 [5]
 Where the United States is either a sending or receiving jurisdiction, a claim requiring an interpretation of the Agreement is a question of federal law. United States ex rel. Esola v. Groomes, 520 F.2d 830, 835 (3d Cir. 1975)