16 F.3d 1107
 COLFAX COUNTY BOARD OF COUNTY COMMISSIONERS, Plaintiffs-Appellants,
v.
STATE OF NEW HAMPSHIRE; Governor of the State of New
Hampshire; Department of Corrections, State of New
Hampshire; Thomas Tarr, Director of the Division of Field
Services of the Department of Corrections of the State of
New Hampshire, Defendants-Appellees.
 No. 92-2252.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 24, 1994.
 
 Harold Breen, Colfax County Attorney, Taos, New Mexico, for Plaintiffs-Appellants.
 William C. McCallum, Assistant Attorney General (Jeffrey R. Howard, Attorney General, on the briefs), Concord, New Hampshire, for Defendants-Appellees.
 Before MOORE and KELLY, Circuit Judges, and VAN BEBBER, District Judge.*
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 Colfax County Board of County Commissioners filed an action against the State of New Hampshire and certain state officials to collect $21,125 in expenses Colfax County allegedly incurred for jailing a fugitive from justice for whom New Hampshire had requested extradition. The district court summarily dismissed the suit. Colfax County now appeals from that dismissal contending its action is supported by County of Monroe v. State of Florida, 678 F.2d 1124 (2d Cir.1982), cert. denied, 459 U.S. 1104, 103 S.Ct. 726, 74 L.Ed.2d 951 (1983), in which a divided court upheld the right of the county to sue a state to recover expenses for detaining and extraditing a fugitive. We disagree with County of Monroe and hold Colfax County has failed to state a claim, and we affirm the dismissal of the action.
 
 
 2
 In February 1991, Terrence Monahan, Jr. was arrested in Colfax County for a motor vehicle violation. A subsequent record search produced Monahan's name in the F.B.I.'s National Crime Information Center computer as a fugitive from New Hampshire for violating his parole. Mr. Monahan was detained in the Colfax County Jail while extradition ensued.
 
 
 3
 The New Hampshire governor executed and then sent to the governor of New Mexico a demand for Monahan's extradition. Although an extradition warrant was subsequently issued by the New Mexico governor, Colfax County retained Monahan in its jail rather than returning him to the demanding state.[1] The exact reason for the delay in the extradition is not altogether clear, but the County represents Monahan had filed, and continued to file, pro se petitions for habeas corpus in various state and federal courts. While the record is silent on the subject, the appellants' attorney stated in oral argument no stay order had been entered by any court prohibiting the County or its officers from complying with the extradition warrant. Thus, the County's failure to return the fugitive to New Hampshire remains unexplained on the record. Nonetheless, the last of Monahan's futile proceedings was dismissed on November 23, 1992.
 
 
 4
 Notwithstanding its refusal to comply with the extradition warrant, five months after Monahan's arrest Colfax County began sending bills to Thomas Tarr, the Director of Field Services for New Hampshire's Department of Corrections (DOC), reflecting a daily charge of $65 for Monahan's incarceration in the County jail. DOC's representative informed Colfax County it would not pay these bills based on its having adopted the National Association of Extradition Officials (NAEO) Resolution No. 31, which provides, in effect, that each asylum state shall bear the "routine and nonextraordinary expenses associated with interstate extradition" without seeking reimbursement from the demanding state. It is uncontested here the assumption behind this agreement is that the costs eventually even out when the situation is reversed and the asylum state asserts its own extradition demands on other states.
 
 
 5
 On January 16, 1993, the Board of County Commissioners of Colfax County filed this action against the State of New Hampshire, its governor, DOC, and Thomas Tarr, seeking unpaid incarceration costs totaling $21,125, as well as costs of litigation, attorney fees and all additional care and upkeep charges until the date of judgment. For subject matter jurisdiction, Colfax County relied on 18 U.S.C. Sec. 3195.[2]
 
 
 6
 This action was summarily dismissed on October 22, 1992. On February 19, 1993, Monahan escaped and apparently remains at large.
 
 
 7
 The issues presented to us focus on the extradition process itself as well as the right of a county of one state to maintain an action in federal court against another state, its entities and officers relating to extradition. Although the parties have argued whether the action is barred by the Eleventh Amendment and whether the district court could assert personal jurisdiction over the defendants, we need not reach those issues. There is a more fundamental barrier to recovery by the County in this case.
 
 
 8
 The right of extradition is founded upon the U.S. Const. art. IV, Sec. 2, cl. 2, which provides:
 
 
 9
 A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.
 
 
 10
 Congress has amplified upon this provision by the adoption of The Extradition Act of 1793, 18 U.S.C. Sec. 3182, giving procedural substance to the Constitutional framework.
 
 
 11
 The system envisioned in the Constitution and provided by Congress is predicated upon the right of the executive authority of one state to make demand upon the executive authority of another. Inherent in this system is the duty of the executive authority of an asylum state to comply forthwith with a lawful extradition demand of a fellow executive.[3]
 
 
 12
 In California v. Superior Court of Cal., 482 U.S. 400, 107 S.Ct. 2433, 96 L.Ed.2d 332 (1987), the Supreme Court noted the principle flaw of the Extradition Clause, that it was not self-executing, led to passage of the Extradition Act of 1793. "The language, history, and subsequent construction of the Extradition Act make clear that Congress intended extradition to be a summary procedure." Id. at 407, 107 S.Ct. at 2438. Extradition proceedings are "to be kept within narrow bounds," id. (quoting Biddinger v. Commissioner of Police, 245 U.S. 128, 135, 38 S.Ct. 41, 43, 62 L.Ed. 193 (1917)), and "[t]he courts of asylum States may do no more than ascertain whether the requisites of the Extradition Act have been met." Id.
 
 
 13
 The asylum state considers only four issues before delivering the fugitive: "(a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether petitioner is a fugitive." Michigan v. Doran, 439 U.S. 282, 289, 99 S.Ct. 530, 535, 58 L.Ed.2d 521 (1978). While a habeas proceeding in the asylum state may determine each of these four questions, the proceeding cannot be transformed into an inquiry into the appropriateness of the demanding state's actions. California, 482 U.S. at 412, 107 S.Ct. at 2440. "[S]urrender is not to be interfered with by the summary process of habeas corpus upon speculations as to what ought to be the result of a trial in the place where the Constitution provides for its taking place." Id. (quoting Drew v. Thaw, 235 U.S. 432, 440, 35 S.Ct. 137, 139, 59 L.Ed. 302 (1914)).
 
 
 14
 By its action in this case, the County seeks to stand the whole extradition process on its head. Failing to recognize the exclusive role of the state governors in the extradition process, the County seeks to impose a liability upon the State of New Hampshire and its executive officers without the involvement of the governor of New Mexico. That avoidance is fatal.
 
 
 15
 The County mistakenly argues New Hampshire "obtain[ed] and secur[ed] Colfax County's assistance and cooperation" in the extradition of the fugitive. This contention reveals a basic misconception of the extradition process which underpins this entire proceeding. Neither the State of New Hampshire nor its governor made any demand upon Colfax County, nor did they direct the County to act in their behalf in the extradition process.
 
 
 16
 It was the governor of the State of New Mexico who empowered Colfax County through the aegis of his extradition warrant.[4] Without that warrant, the County and its officers were powerless to assert jurisdiction over Mr. Monahan and make him answerable to the New Hampshire charges. In actuality, Colfax County acted as an agent of the governor of New Mexico, and any powers the County exercised flowed directly from the New Mexico executive.
 
 
 17
 This fundamental structure of the extradition process was recognized by Judge Newman in his dissent in County of Monroe. He first pointed out even though Sec. 3195 creates an implied right for the asylum state to recover extradition expenses, its clear language supports the conclusion that right was provided only to the state. 678 F.2d at 1135 (Newman, J., dissenting). Judge Newman explained that reasoning flows from those provisions in the Extradition Act which empower the "executive authority" of the states to effect extradition. Id. at 1135-36. We agree with that analysis.
 
 
 18
 Moreover, contrary to the County's argument, New Hampshire had no contract with Colfax County. Indeed, if any "contract" arises from the extradition process, it is between the executive authorities, the governors, of the two states.[5]
 
 
 19
 Even assuming for the sake of argument, however, that Colfax County and not the State of New Mexico has authority to proceed under 18 U.S.C. Sec. 3195, it has not itself complied with a plain condition precedent in the statute. In part, Sec. 3195 states, "All costs or expenses incurred in any extradition proceeding in apprehending, securing and transmitting a fugitive shall be paid by the demanding authority." (emphasis added). The statute is written in the conjunctive and contemplates the "transmitting" of the fugitive as a condition precedent to the right to demand payment of costs.
 
 
 20
 In effect, Colfax County has not fulfilled its obligation to deliver up Mr. Monahan, but nonetheless wants New Hampshire to pay for his keep. When this demand is placed in context with the remaining factors of this case already discussed, the County's position becomes specious. Even discounting the validity of the constitutional and jurisdictional defenses asserted by New Hampshire, it is evident to us Colfax County has failed to cross a fundamental threshold to recovery. The district court did not err in dismissing the action.
 
 
 21
 AFFIRMED.
 
 
 
 *
 Honorable G. Thomas Van Bebber, United States District Judge for the District of Kansas, sitting by designation
 
 
 [1]
 We assume these facts from arguments in the briefs. There is no record of the events before us, but no contention is made which makes the assumptions invalid. New Mexico law requires the issuance of the governor's warrant in response to an appropriate demand from another governor. N.M.Stat.Ann. Sec. 31-4-7 (1978). See also Sec. 31-4-12 (1978)
 
 
 [2]
 Section 3195 states, in part: "All costs or expenses incurred in any extradition proceeding in apprehending, securing, and transmitting a fugitive shall be paid by the demanding authority."
 
 
 [3]
 See, for example, N.M.Stat.Ann. Sec. 31-4-2 (1978)
 
 
 [4]
 See N.M.Stat.Ann. Sec. 31-4-8 (1978)
 
 
 [5]
 New Mexico law defines "executive authority" as used in extradition as the governor or some person acting in the governor's capacity. N.M.Stat.Ann. Sec. 31-4-1 (1978)