(No. 21183.—

THE PEOPLE *ex rel.* Henry Kahn, Plaintiff in Error, *vs.* WILLIAM D. MEYERING, Sheriff, Defendant in Error.

*Opinion filed April 23, 1932—Rehearing denied June 10, 1932.*

MYER H. GLADSTONE, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, GRENVILLE BEARDSLEY, and EUCLID L. TAYLOR, of counsel,) for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

Henry Kahn was arrested by the sheriff of Cook county on October 29, 1931, by virtue of a warrant issued by the Governor directed to any sheriff, coroner or constable of any county in the State, commanding the arrest of John J. Hill and his production forthwith in open court and giving him not less than twenty-four hours to obtain counsel and avail himself of the laws of this State for the security of personal liberty, and his delivery, unless discharged by the court, to the agent of the Governor of New York, to be taken back to the State from which he fled. The warrant recited that the Governor of the State of New York demanded of the Governor of Illinois the arrest and delivery of Hill as a fugitive from justice, and had produced a copy of an indictment, certified as authentic and duly authenticated by the Governor of New York, charging Hill with having committed on April 15, 1931, in the county of Sullivan, in the State of New York, the crime of grand larceny in the first degree, which the Governor of New York certified to be a crime under the laws of New York, and recited further that the Governor of Illinois is satisfied that Hill is a fugitive from justice and has fled from the State of New York and taken refuge in this State. Upon his arrest Kahn filed in the criminal court of Cook county a petition for a writ of *habeas corpus,* alleging that he was unlaw-

fully restrained of his liberty by the sheriff of Cook county under the name of John J. Hill by virtue of the Governor's warrant, which charged him with grand larceny from Albert Holcomb committed in the State of New York on April 15, 1931; that he was not substantially charged with crime in the State of New York; that the requisition and papers were not in regular form; that he was not the same person described in the requisition and accompanying papers from New York, and that the requisition is not made in good faith but for some ulterior purpose. The writ was ordered to issue, the sheriff made his return, and after a hearing the court remanded the petitioner to the custody of the sheriff. The petitioner then sued out a writ of error.

The following is a copy of the indictment:

*"The People of the State of New York against John J. Hill and John Clark, Defendants.*

"The grand jury of the county of Sullivan and State of New York, by this indictment, accuse the defendants, John J. Hill and John Clark, of the crime of grand larceny in the first degree, contrary to sections 1290 and 1294 of the penal law of the State of New York.

"Dated October 8th, 1931."

Certain statutes of the State of New York and certain decisions of the courts of that State were also introduced in evidence.

Henry Kahn, the petitioner, testified: "My name is Henry Kahn. I live in Chicago. Was in the State of New York during the last year. I was selling S. W. Straus bonds. I had a transaction with Albert Holcomb in February or March of this year. I saw him at his home in Acidalia, New York. * * * Mr. Holcomb wrote a letter to J. B. Owen, 507 Fifth avenue. We sent out a prospective on Straus bonds, and Mr. Holcomb wrote a letter into the office requesting a salesman to call on him. I called on Mr. Holcomb and went over the S. W. Straus issues I had with me. A day previous to the day I was there I had an S. W. Straus current offering sheet with enumerations of

some sixty to eighty first mortgage real estate gold bonds. I went over these bonds with Mr. Holcomb and showed him that under present conditions he could get a very good rate of interest at the purchase time. He bought bonds on the third largest hotel, the Park Central Hotel, located at Fifty-sixth and Fifty-seventh streets, a square block, and he bought Ambassador Hotel bonds at Atlantic City, New Jersey—a $16,500,000 issue. He also bought Fifty-ninth street and Madison avenue, which is the name of the building and name of the bond. He also bought from me a bond on a building at 229 West, or 230 some odd West, on Twenty-second street. He also purchased from me bonds on Fox Metropolitan Play House Theaters, consisting of 148 Fox houses, also New England Fox Theaters of New England, with some 68 theaters. The face value of these bonds is all $1000. The aggregate amount of the bonds I sold him was something over $30,000. Every one of the interest coupons were attached to those bonds up to date. Not a one of those bonds were in default at that time. He paid me for the bonds. * * * I never used the name of John J. Hill in any other transaction. The transaction I speak of is the only one I ever had in Sullivan county. * * * I am Henry Kahn. I used the name J. J. Hill. I never used the name of Alfred Kahn. I used the name of J. J. Hill because when I met Mr. Holcomb at his house he asked me a question—asked what nationality I was. I said, 'Why do you ask?' and he said he wondered if I were Jewish. He said he didn't want to have any dealings with a Jew, so I used the name of Hill."

Louis C. King, a witness called for the defendant in error testified that he was a nephew of Albert Holcomb, who lived in Acidalia, New York, and that he saw Kahn at Holcomb's home there. He came in and introduced himself as J. J. Hill. Afterward in a conversation, Holcomb, at the time of the indictment, after the proceedings before the grand jury were over, called Kahn John J. Hill.

The plaintiff in error has assigned fourteen errors on the record, but they will all be disposed of by the consideration of assignments numbered 10, 11 and 12, that the court erred in finding the relator was substantially charged with a crime in the State of New York, in finding that the relator was a fugitive from justice from the State of New York, and in finding that the relator was the same person described in the Governor's warrant.

The Federal constitution requires that a person charged with crime in any State who shall flee from justice and be found in another State shall, on demand of the executive authority of the State from which he fled, be delivered up to be removed to the State having jurisdiction of the crime. An act of Congress provides the regulations necessary to carry this provision into execution. (18 U. S. C. A. sec. 662.) The method of procedure is well understood. Whenever the executive authority of any State demands any person, as a fugitive from justice, of the executive authority of another State and produces a copy of an indictment found or affidavit made before a magistrate charging the person demanded with a crime certified as authentic by the Governor of the demanding State, it is the duty of the Governor of the State to which such person has fled to cause him to be arrested and delivered to the agent of the executive authority making such demand. Therefore, whenever such demand is made on the Governor of a State it must be made to appear to him that the person demanded is substantially charged with a crime against the laws of the State from whose justice he is alleged to have fled, by an indictment or affidavit certified as authentic by the Governor of the demanding State, and that the person demanded is a fugitive from the justice of that State. Whenever an arrest has been made of a person charged to be a fugitive from the justice of another State he is entitled to invoke the judgment of the courts either of the State or of the United States by the writ of *habeas corpus* upon the law-

fulness of his arrest and imprisonment. *Roberts* v. *Reilly,* 116 U. S. 80.

The first of the requirements which the Governor must determine before issuing his warrant—that is, whether the person demanded is substantially charged with a crime—is a question of law, and is always open to judicial inquiry upon the face of the papers on an application for discharge under a writ of *habeas corpus*. The relator gave in evidence the requisition papers, containing, besides the requisition and the copy of the indictment hereinbefore set out, the application of the district attorney of Sullivan county for the requisition, which was sworn to by the district attorney and contained the statement that John J. Hill was duly indicted by the grand jury in the county of Sullivan, New York, on October 8, 1931, charged with the crime of grand larceny in the first degree, committed in the county of Sullivan on or about April 15, 1931, and that the offense charged in the indictment was a felony, viz., the crime of grand larceny in the first degree as defined in sections 1290, 1294 and 1295 of the penal law of the State of New York, as follows:

"Sec. 1290. *Larceny defined.*—A person who, with the intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person:

"1. Takes from the possession of the true owner, or of any other person; or obtains from such possession by color or aid of fraudulent or false representation or pretense, or of any false token or writing; or secretes, withholds, or appropriates to his own use, or that of any person other than the true owner, any money, personal property, thing in action, evidence of debt or contract, or article of value of any kind; * * * steals such property, and is guilty of larceny."

"Sec. 1294. *Grand larceny in first degree.*—A person is guilty of grand larceny in the first degree, who steals,

or unlawfully obtains or appropriates, in any manner specified in this article: * * *

"3. Property of the value of more than five hundred dollars, in any manner whatever."

"Sec. 1295. *Grand larceny in first degree; how punished.*—Grand larceny in first degree is punishable by imprisonment for a term not exceeding ten years."

The question of law whether the plaintiff in error was charged substantially by the indictment with a crime under the law of New York arises upon the face of the requisition papers. There can be no doubt about the insufficiency of the indictment to charge a crime under either the common law or the law of Illinois. That is not, however, the standard for determining the question. It is within the power of each State, except as limited by the constitution of the United States, to declare what shall be offenses against her laws, and citizens of other States when within her jurisdiction are subject to those laws, and the words of the clause in reference to fugitives from justice are sufficiently comprehensive to include every offense against the laws of the demanding State. Each State has the right to establish the forms of pleading and process to be observed in her own courts in both civil and criminal cases, subject only to those provisions of the constitution of the United States involving the protection of life, liberty and property in all the States of the Union. It is according to the laws of New York, the State whose laws are alleged to have been violated, that the indictment must be construed, and not by the technical rules of criminal pleading at common law or by the statutes of the State in which the person demanded is found. (*Ex parte Reggel,* 114 U. S. 642.) If the indictment was in substantial conformity with the statute of New York its sufficiency as a matter of technical pleading cannot be inquired into on *habeas corpus.* (*Pearce v. State of Texas,* 155 U. S. 311; *Munsey v. Clough,* 196 id. 364.) One ground, among others, on which it was

claimed that the indictments involved in the *Pearce case* were not sufficient to justify the extradition, was that they did not allege that the offenses were committed in the State of Alabama, the demanding State, and in violation of her laws; that the indictments were wholly void, in that no time or place was alleged therein and it did not appear where the offenses were committed. In the opinion of the Court of Appeals it was said that indictments dispensing with the allegations of time and venue, in conformity with the code of Alabama, had been sustained by judicial decisions in that State and were not necessarily fatally defective in every State of the Union. The Supreme Court said in regard to this: "What the State court did was to leave the question as to whether the statute was in violation of the constitution of the United States, and the indictments insufficient accordingly, to the demanding State. Its action in that regard simply remitted to the courts of Alabama the duty of protecting the accused in the enjoyment of his constitutional rights, and if any of those rights should be denied him, which is not to be presumed, he could then seek his remedy in this court." In *Drew* v. *Thaw*, 235 U. S. 432, the court states that the constitution says nothing about *habeas corpus* in connection with the rendition of fugitives from justice but peremptorily requires their delivery, upon proper demand, to the State having jurisdiction of the crime. No discretion is allowed—no inquiry into motives. The technical sufficiency of the indictment is not open, and even if it be true that the argument stated offers a nice question, it is a question as to the law of New York which the New York courts must decide.

The plaintiff in error introduced in evidence, among other sections of the code of criminal procedure of the State of New York, sections 295*a*, 295*b*, 295*c*, 295*d*, 295*g*, 295*h* and 295*i*, which authorize an indictment in the form of the indictment a copy of which was included in the requisition papers. They also require the court, at the re-

quest of the defendant upon arraignment or at any later stage of the proceedings, to direct the district attorney to file a bill of particulars of the crime charged. He also introduced a decision of the Court of Appeals of New York (*People* v. *Bogdanoff*, 254 N. Y. 16,) in which an indictment for murder in the simplified form authorized by the code, with a bill of particulars filed by the district attorney stating that the defendants "on the 27th day of July, 1929, at the city of Buffalo in this county, killed Ferdinand Fechter by shooting him," was sustained, and a conviction of the defendants thereon was affirmed.

The question whether the plaintiff in error is a fugitive from justice is one of fact. The only evidence of the time of the commission of the crime is the affidavit of the district attorney on the application for the requisition that the offense was committed on April 15, 1931, in Sullivan county. The act of Congress does not require the date of the alleged commission of the crime to be stated, the statute of New York does not require the affidavit to state it, but here the district attorney did state both the time and place. The plaintiff in error admits that he was present at that place at about the time stated. Therefore, if any crime was then committed and he committed it, he is a fugitive from justice.

As to the question of the plaintiff in error's identity as the man indicted, he testified that he used the name J. J. Hill in his transaction with Holcomb, who knew him by no other name. Whether the difference between the names J. J. Hill and John J. Hill may be corrected, or whether the correction is necessary under the New York code of criminal procedure, is not shown, but it satisfactorily appears that the plaintiff in error is the man intended to be indicted by the name of John J. Hill.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*