(No. 32667.)

THE PEOPLE *ex rel.* Margaret Gilbert, Appellant, *vs.* JOHN E. BABB, Sheriff, Appellee.

*Opinion filed May 20, 1953—Rehearing denied September 21, 1953.*

GOLDBERG, DEVOE, BRUSSELL & SHADUR, of Chicago, (ABRAHAM W. BRUSSELL, MILTON I. SHADUR, and ABNER J. MIKVA, of counsel,) for appellant.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, ARTHUR F. MANNING, and JAMES V. CUNNINGHAM, all of Chicago, and EPHRAIM MARTIN, of Cambridge, Mass., of counsel,) for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

This is an appeal brought under section 2 of the Fugitives From Justice Act, (Ill. Rev. Stat. 1951, chap. 60, par. 2,) from the judgment of the criminal court of Cook County remanding the appellant, Margaret Gilbert, to the custody of the appellee, the sheriff of Cook County, for delivery to an agent of the Commonwealth of Massachusetts.

On October 9, 1951, appellant was arrested under a fugitive warrant issued by the municipal court of Chicago

on a complaint filed by a Chicago police officer at the instigation of Massachusetts authorities. She was granted a continuance and released on bond the same day and the cause was set for trial on November 13, 1951. Before that time, on November 8, 1951, Massachusetts authorities filed requisition papers with the Governor of Illinois. The basis of the requisition was a Massachusetts indictment returned on September 1, 1951, charging that appellant and one Martha H. Fletcher did, on January 1, 1947, and on divers other days between that date and the presentment of the indictment "conspire together and with Dirk J. Struik and Harry E. Winner to advocate, advise, counsel and incite the overthrow by force and violence of the government of the Commonwealth of Massachusetts by speech, exhibition, distribution and promulgation of certain written and printed documents, papers and pictorial representations, against the peace of said Commonwealth, and contrary to the form of the statute in such case made and provided."

Upon learning that demand had been made for her extradition, appellant, on November 13, 1951, requested a hearing before the Governor of Illinois. The request was granted and hearings were held on December 15, 1951, and January 21, 1952, before a representative acting for and in behalf of the Governor. One of the contentions raised by appellant at these hearings was that the pendency of the proceeding in the municipal court, which had been continued from time to time on motion of both parties, precluded action by the Governor on the extradition request. However, on March 20, 1952, the Governor issued a rendition warrant directed against appellant.

In accordance with the provisions of the rendition warrant and section 2 of the Fugitives From Justice Act, appellant was produced in open court and permitted to file a petition for writ of *habeas corpus*. It is from the judgment of the criminal court quashing her petition for writ of *habeas corpus* and remanding her to the custody of the

sheriff, that appellant has appealed to this court for review. Throughout the period of the proceedings in the criminal court, and up to the present time, the proceeding in the municipal court has been continued.

Before looking to other errors assigned, we shall first consider appellant's contention that the Governor of Illinois was without authority to issue a rendition warrant in this cause during the pendency of the proceeding commenced in the municipal court. There are two alternative methods by which extradition proceedings may be commenced in this State. It is admitted that they do not conflict and the choice of method is optional in the demanding State. The first method is by direct application to the Governor for a writ of extradition, the procedure established by the controlling Federal statute (18 USC, sec. 3182.) The second method is by complaint, under oath, to any judge, justice of the peace or police magistrate of this State, in the manner prescribed by sections 3 and 4 of the Fugitives From Justice Act. (Ill. Rev. Stat. 1951, chap. 60, pars 3 and 4.) Appellant sees the Illinois statute as an alternative means of extradition designed to relieve the Governor of a heavy administrative burden and to hold a fugitive prior to the issuance of a rendition warrant, but takes the position that once extradition proceedings have been commenced before a judicial officer, the Governor is without power to act upon a later and direct writ of extradition, unless and until the proceedings before the court have been concluded and a report delivered to the Governor as provided in section 4.

It is our opinion that appellant has placed herself beyond the position where she may raise the question. The record shows that it was the appellant, and not the Governor of Illinois or the Commonwealth of Massachusetts, who was the moving party in obtaining a hearing on the writ filed with the Governor and who, for the purpose of obtaining such a hearing, first moved to continue the proceedings in

the municipal court. In so doing, appellant waived further proceedings in the court, for, after the hearing before the Governor was completed, there was no necessity, either in law or fact, to complete the court proceeding. We believe such a result occurs notwithstanding the fact that appellant questioned the propriety of the executive to proceed while the court action was pending. Since appellant requested the hearing before the Governor, she was hardly in a position to complain of it at the same time. Some suggestion is made by appellant that different matters could have been presented in the municipal court than were presented to the Governor. Just what those matters were is left to speculation. Moreover, appellant states in her argument that there is no dispute in the facts of this case, that the facts were stipulated and that the issues are solely questions of law. Of necessity, the legal questions could not arise until the *habeas corpus* proceeding. By either method of procedure, the ultimate responsibility of determining whether one is a fugitive rests with the Governor issuing the fugitive warrant, and it has been held (*People ex rel. Guidotti* v. *Bell,* 372 Ill. 572,) that the authority of the executive is restricted to questions of fact. We fail to perceive where the Governor's act of determining the facts by direct hearing, rather than from a report of a judicial officer, can be said to work any substantial injustice on the appellant.

It is next contended that the ruling of the trial court was erroneous for reason that the indictment upon which the Governor's extradition warrant was issued violated the fourteenth amendment of the United States constitution and therefore could not charge appellant with an offense punishable by the Commonwealth of Massachusetts. Specifically, it is urged that the indictment invades her fundamental right of freedom of speech, which is protected by the fourteenth amendment. The trial court declined to pass upon the constitutional sufficiency of the indictment, hold-

ing that such a determination rests with the courts of Massachusetts. Appellant insists that the supremacy clause of the Federal constitution (article VI, clause 2) makes it incumbent upon courts of the asylum State in extradition proceedings to examine the validity of the indictment, or its underlying statute, under the Federal constitution, before they can permit extradition to the demanding State.

The contention made raises the question of how far courts of an asylum State may or must go in their inquiry into the validity of extradition proceedings. The scheme of interstate rendition of persons accused of a crime is established by the constitution of the United States and by the statutes enacted by Congress to implement the constitution. The constitutional provision, which is found in article IV, section 2, clause 2, is as follows: "A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime." Of this clause, one court has said that it is a procedural provision which does not impinge on any substantive right of any individual and does not affect any provision of the constitution or its amendments protecting such rights. (*Johnson* v. *Matthews,* 182 Fed. 2d 677.) Judicial decisions which have considered the extradition scheme establish that before the executive of the asylum State should comply with the demand, he must determine, first, that the person demanded is substantially charged with a crime against the laws of the State from whose justice he is alleged to have fled, by an indictment or affidavit certified as authentic by the Governor of the demanding State, and, second, that the person demanded is a fugitive from the justice of that State. (*Roberts* v. *Reilly,* 116 U.S. 80, 29 L. ed. 544; *People ex rel. Kahn* v. *Meyering,* 348 Ill. 486.) Though the extradition agreement of the constitution makes no

provision for judicial review, *habeas corpus* has historically been the process available for testing the validity of the arrest and detention by authorities of the asylum State for extradition purposes. The scope of the extradition inquiry and the issues which are presented by it have been resolved by many decisions of the Supreme Court of this nation and, in essence, the established rule is that the court may determine whether a crime has been established in the demanding State, whether the fugitive in custody is the person so charged, and whether the fugitive was in the demanding State at the time the alleged crime was committed. (See: *Johnson* v. *Matthews*, 182 Fed. 2d 677, p. 679 and cases there cited.) The *Johnson case* also gives expression to the rule that the *habeas corpus* proceeding tests only the arrest and detention by authorities of the asylum State and does not test the validity of the original or contemplated incarceration in the demanding State.

In *Drew* v. *Thaw*, 235 U.S. 432, 59 L. ed. 302, the court had this to say about the scope of the *habeas corpus* proceeding: "In extradition proceedings, even when, as here, a humane opportunity is afforded to test them upon habeas corpus, the purpose of the writ is not to substitute the judgment of another tribunal upon the facts or the law of the matter to be tried. The Constitution says nothing about habeas corpus in this connection, but peremptorily requires that upon proper demand the person charged shall be delivered up to be removed to the state having jurisdiction of the crime. * * * There is no discretion allowed, no inquiry into motives. * * * The technical sufficiency of the indictment is not open."

In face of these established limitations which have been placed upon judicial inquiry into the validity of extradition proceedings, appellant contends that it is incumbent upon courts of the asylum State, by virtue of the supremacy clause of the Federal constitution, to hear and determine the constitutional validity of the indictment returned in the

demanding State. We have found no case presenting or determining the exact contention made, but we are not without Federal precedent for decision on the principle involved. In two recent cases, *Sweeney* v. *Woodall,* 344 U.S. 93, 97 L. ed. (Adv. Sheet p. 86) and *Johnson* v. *Matthews,* 182 Fed. 2d 677, (*certiorari* denied 340 U.S. 828,) there was presented the question of whether it was proper, in *habeas corpus* testing the validity of extradition proceedings, to hear and determine the constitutional validity of phases of the penal action by the demanding State in respect to the fugitive. In each case the fugitive sought to avoid extradition by asserting that because of alleged cruel and inhuman treatment by penal authorities, his past and any future confinement by the demanding State was in violation of the fundamental rights secured to him by the Federal constitution. Thus, in those cases, as in the present, the fugitives sought to use the judicial review of extradition proceedings as a vehicle to obtain a hearing on claims that the State's action was an invasion of the personal rights and liberties protected by the fourteenth amendment.

In the *Sweeney case,* the Supreme Court stated that the constitutional scheme of extradition and considerations fundamental to our Federal system require that the prisoner test the claimed unconstitutionality of his treatment in the courts of the demanding State, and held that the Court of Appeals had erred in holding that the applicant for *habeas corpus* was entitled to a hearing in the asylum State on the merits of his constitutional claims.

The same result was reached in the *Johnson case* where the court, after stating that the matter was not merely one of *forum non conveniens,* held that the hearing on the merits of the constitutional claim made should properly be held in the demanding State. It appears that this result, too, was prompted by "considerations fundamental to our federal system" for the opinion states, at page 680: "To say that the federal courts may interpose in this process

their judgment of the internal processes of the states and the fidelity of their officials to their duties, is to nullify the agreement embedded in the Constitution and to reestablish the rule of the law of nations which it was intended to disestablish. The federal courts have no power to nullify a provision of the Constitution. Of course, appellant has a right to test in a federal court the constitutional validity of his treatment by Georgia authorities. But that test cannot come as a part of the constitutional process of returning a fugitive to the state where he is charged. If this fugitive's constitutional rights are being violated in Georgia, he can and should protect them in Georgia. Not only state courts but a complete system of federal courts are there."

From these decisions limiting the scope of the judicial inquiry into extradition proceedings, we believe it emerges clearly that this court may not properly, even under the supremacy clause, nullify the extradition agreement contained in the constitution by interposing our judgment on the merits of the constitutional attack made by appellant on the processes of Massachusetts. As previously noted, it is said that the extradition clause is a procedural provision which does not conflict with or affect any provision of the constitution or its amendments protecting the rights of individuals. The applicable decisions of the Federal courts, by which we are bound, show no tendency to extend the judicial inquiry into the extradition process beyond that concept. We shall not presume to exercise any authority over the courts or officials of Massachusetts by holding to the contrary. Accordingly, we hold that the trial court in this cause properly refused to hear and determine the constitutional objections to the indictment returned by Massachusetts authorities.

The remaining error assigned by appellant is that the indictment is so vague and indefinite as to fail to substantially charge her with a crime. Appellant does not complain

of technical matters as to form but of the substance of the indictment, contending that the common-law crime of conspiracy upon which the indictment is based is too nebulous and vague a concept by which to punish the constitutionally protected conduct of free speech, or to inform appellant wherein her conduct was criminal.

Here, again, appellant seeks to raise matters which cannot be tested in the constitutional process of returning a fugitive to the State where he is charged. It is within the power of each State, except as limited by the constitution of the United States, to declare what shall be offenses against her laws, and the words of the extradition clause are sufficiently comprehensive to include every offense against the law of the demanding State. In addition, each State has the right to establish the forms of pleading and process to be observed in her own courts in both civil and criminal cases. It is, therefore, according to the laws of the State whose laws are alleged to be violated, that the indictment must be construed, and not by technical rules of criminal pleading at common law or by the statutes of the State in which the person demanded is found. (*Ex parte Reggel*, 114 U.S. 642, 29 L. ed. 250; *People ex rel. Kahn* v. *Meyering*, 348 Ill. 486.) If the indictment is in substantial conformity with the law of the demanding State, its sufficiency as a matter of technical pleading cannot be inquired into on *habeas corpus*. (*Pearce* v. *Texas*, 155 U.S. 311, 39 L. ed. 164.) The reason for such a rule is succinctly stated in *Pierce* v. *Creecy*, 210 U.S. 387, 52 L. ed. 1113, as follows: "* * * the indictment, in order to constitute a sufficient charge of a crime to warrant interstate extradition, need show no more than that the accused was substantially charged with crime. * * * If more were required it would impose upon courts, in the trial of writs of *habeas corpus,* the duty of a critical examination of the laws of states with whose jurisprudence and criminal pro-

cedure they can have only a general acquaintance. Such a duty would be an intolerable burden, certain to lead to errors in decision, irritable to the just pride of the states, and fruitful of miscarriage of justice. The duty ought not to be assumed unless it is plainly required by the Constitution; * * *."

The indictment here charges .that appellant "did conspire together and with * * * to advocate, advise, counsel and incite the overthrow by force and violence of the government of the Commonwealth of Massachusetts by speech, exhibition, distribution and promulgation of certain written and printed documents, papers and pictorial representations, against the peace of said Commonwealth, and contrary to the form of the statute in such case made and provided." It is admitted that the reference to a statute is erroneous surplusage but appellant stated to the court below that she did not base her attack on that error of form. Looking to the record in light of the remaining language of the indictment, we find that it is established without question that by operation of the Massachusetts constitution, (Part the Second, Article VI,) the general rules of common law making conspiracy an indictable offense are presently in force in that jurisdiction. (See: *Commonwealth* v. *Hunt,* 4 Metc. Rpts., Mass. III.) Also, portions of the Massachusetts "Simplification of Criminal Pleadings Act" (chapter 277, secs. 17 and 79,) given in evidence, demonstrate that the indictment complies with the established form of pleading. Appellant does not deny the charge against her and does not deny that she is the fugitive charged or her presence in Massachusetts on the date of the crime. Without more, we must conclude that the indictment is in substantial conformity with the laws of Massachusetts, which is all that we may determine in this *habeas corpus* proceeding. Its sufficiency to substantially charge a crime as a matter of technical pleading is

360

for the courts of Massachusetts to decide under Massachusetts law, and, in so doing, it is to be presumed that the constitutional considerations urged upon us by appellant will not go unheeded.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*