## SUPREME COURT — SPECIAL TERM — ERIE COUNTY.

### November, 1919.

## THE PEOPLE EX REL. PLUMLEY v. JAS. W. HIGGINS.

### (109 Misc. 328.)

HABEAS CORPUS*—EXTRADITION†—INDICTMENT‡—WHEN RELATOR ENTITLED TO DISCHARGE.

The questions presented on habeas corpus for relator's discharge under an interstate extradition warrant to answer an indictment, are the identity of the relator; whether the indictment charges him with the commission of a crime under the laws of the demanding state, and whether he is in a legal sense a "fugitive from justice."

Relator, upon his marriage in the State of New Jersey, brought his wife to his parents' home in the city of Buffalo, where he has always resided, and within a day or so the wife had epileptic fits and confessed

---

* See notes, Vols. 15, 152; 23, 55.
† See notes, Vols. 7, 83; 7, 411; 8, 438; 23, 41.
‡ See notes, Vols. 6, 374; 10, 558; 11, 174, 376; 22, 454.

that she and her parents had deceived and defrauded relator as to her physical condition and had made a false oath as to her health to obtain the marriage license. After service upon her in this state of the summons and complaint in an action to annul the marriage on the grounds of fraud and physical incapacity, which action was not defended, relator at his wife's request had her taken back to her parents' home in New Jersey. The day after the entry of the final judgment decreeing that the marriage was null and void from its date, relator, in an indictment which did not allege that he was or is a resident of the State of New Jersey, was charged with having deserted his wife at a particular place therein and unlawfully refusing and neglecting to provide for and maintain her. *Held*, that defendant was immune from extradition and entitled to his discharge.

HABEAS CORPUS proceeding.

*I. Rumizen* and *Simon Fleischmann*, for relator.

*Walter F. Hofheins, Deputy District Attorney* of Erie county, for respondent.

MARCUS, J.:

This is a habeas corpus proceeding in which the relator, Plumley, asks for his discharge from custody under an extradition warrant issued on the request of the governor of New Jersey for the return to that state of the relator to answer an indictment there charging him with the desertion of his wife in New Jersey. The facts set forth in the papers, and adduced on the hearing, are undisputed.

Plumley is twenty-six years of age, and resides in and has at all times been a *bona fide* resident of the State of New York, having always lived with his parents, and for a number of years last past at Buffalo. He served with the United States army both in this country and in France during the recent war; and on April 5, 1919, married a young woman in Camden, N. J., after having spent but a few days there prior to the wedding. Immediately after the marriage relator brought his wife to Buffalo, where they took up their residence tem-

porarily with his parents. A day or so after their arrival in Buffalo the wife had epileptic fits, and admitted that she and her parents had deceived and defrauded relator as to her physical condition, and had fraudulently sworn in New Jersey as to her health in connection with obtaining a marriage license in Camden, N. J. The wife confessed to the wrong she had done relator, and asked that he take her back to her parents' home near Camden, which he did, reaching Camden on the morning of April 14, 1919, by ferry from Philadelphia. He engaged an automobile, had his wife taken to her home, a few miles from Camden, and returned to Philadelphia, and thence to Buffalo the same day, having been in New Jersey only a few minutes.

Before leaving Buffalo the relator had process and papers served upon the wife, personally, within the State of New York, in a civil action which he instituted for the annulment of the marriage on the grounds of fraud and physical incapacity. No defense was interposed, and an interlocutory judgment annulling the marriage was entered July 10, 1919, upon which under the practice in this state a final judgment could be and was entered three months thereafter to like effect October 14, 1919. Both the interlocutory and the final judgments provided and decreed in express terms that the marriage was null and void from the date of its inception.

On October 15, 1919, the day after the final judgment of annulment had become operative and effective, the grand jury of Camden county, N. J., returned an indictment against relator charging him with having deserted his wife at Camden on April 14, 1919, and unlawfully refusing and neglecting to provide for and maintain her. The indictment does not allege that he was or is a resident of New Jersey, but refers to him as " late of the city of Camden in the said county of Camden." The above are the salient and material undisputed facts.

The questions presented on habeas corpus in a case of this type are as to the identity of the alleged fugitive, whether the

crime was committed in the foreign state under its laws, whether the indictment or information charges a crime under such foreign laws, and whether the person apprehended is within the fair and legal sense of the term, a fugitive from justice. Moore Extradition, 887; People ex rel. Genna v. McLaughlin, 145 App. Div. 521, 26 N. Y. Crim. 242; People ex rel. Lawrence v. Brady, 56 N. Y. 182; Munsey v. Clough, 196 U. S. 364; McNichols v. Pease, 207 id. 109. These authorities also hold that evidence may be taken in such a proceeding to aid the court in determining the facts bearing upon the legal questions involved, and that the questions sometimes become mixed questions of fact and law.

I have reached the conclusion that the relator is immune from extradition on each of the last mentioned three grounds, his identity not being questioned.

In the first place, it is perfectly clear that Plumley was never a resident of, nor did he ever have a domicile in New Jersey, nor did he have any intention of being, becoming or remaining such resident of that state. His presence there on the occasion of his marriage, and for a few minutes a few days after his marriage, when he took his wife to Camden at her request, were obviously temporary, and afforded no grounds for regarding him as a resident. Under these circumstances it seems to me that it cannot be held that the defendant did desert his wife in New Jersey.

The statute under which the indictment is found makes it a crime for a husband wilfully to desert and to refuse or neglect to provide for and maintain his wife. It is entirely certain that there was nothing wilful about relator's taking his wife back to New Jersey, especially as it was on her request, and leaving her there under the circumstances disclosed by the record, and upon the hearing; and the judgment in the annulment suit conclusively confirms this view. There was thus lacking under the New Jersey law, itself, a vital element of the statutory crime for which it is sought to extradite the re-

lator. While in one aspect this may be considered a matter of defense to be presented upon a trial in the courts of New Jersey, I think, in view of the conceded facts disclosed before this court it can properly be taken into consideration here under the circumstances of this case in the determination of the question by this court, as to whether a crime was committed at all in New Jersey, under the laws of that state.

Furthermore, it cannot fairly be said that relator was the husband of the woman he married, at least, so as to impose upon him an obligation for her support either at the time he took her to Camden on his return from Buffalo, or at the time the indictment was found. Before he left the State of New York with his wife for Camden relator had instituted an action for the annulment of the marriage on grounds existing at the time thereof, and he subsequently was granted an interlocutory and a final judgment of annulment. These judgments, as already appears, specifically declare the marriage void from its inception. I appreciate that section 7 of the Domestic Relations Law of the State of New York provides that such a marriage as the present one is void from the time that its nullity is declared by a court. It does not follow, however, that the provision of the judgment declaring the marriage void from its inception is, in itself, inoperative for all purposes. It seems to me entirely reasonable to hold this provision valid, in so far as it had the effect under the circumstances of this case of absolutely relieving, and having relieved relator from any obligation to support his wife, at any place, or at any time subsequent to the marriage. In any event, I do not think the grand jury in Camden county could lawfully find an indictment a day after, or at any time after the final judgment in the annulment action was entered, irrespective of the validity and force of the provision that the marriage was void from the beginning; and while not decisive of the question here presented, it is quite inconceivable that the grand jury would have found an indictment, if they had knowledge of, or had had

8

before them the final judgment of annulment, entered the day before the indictment was returned. Such a procedure would probably have exposed the indictment itself to the further attack, that the grand jury failed to give the full faith and credit to the judgment of the Supreme Court of the State of New York to which it was entitled under the federal constitution, and to the provision of said judgment declaring the marriage void from its inception. In this connection, attention may be called to section 1754 of the New York Code of Civil Procedure, which provides that a final judgment annulling a marriage rendered during the lifetime of both parties, is conclusive evidence of the invalidity of the marriage in every court of record, or not of record, in any action or special proceeding, civil or criminal. The relator, therefore, as I view it, did not desert his wife wilfully or otherwise, in New Jersey, and was not guilty of any crime under the laws of New Jersey, and therefore cannot be extradited.

The prosecuting authorities and the courts of Camden county will doubtless be disposed to dismiss the indictment on learning of the final judgment of annulment rendered by the Supreme Court of the State of New York, the day before the indictment was filed.

Like considerations and reasoning lead to the conclusion that the indictment, which is somewhat indefinite, does not set forth facts or acts constituting the crime of desertion under the statutes upon which it is based, of the State of New Jersey, and if this be so, it is the duty of the courts here to refuse extradition, or, what is the same thing, to hold it unlawful under the circumstances of this case. The indictment does not allege that the relator, or his wife, were residents of New Jersey, or that either ever had a domicile there, or that relator was actually in New Jersey at the time of the alleged desertion. The allegations of the indictment on these vital points are extremely guarded. The only recital of the indictment on these points is that Plumley is or was " late of the city of Camden in said

county of Camden." This certainly does not allege the residence of Plumley at the time of the alleged commission of the crime of desertion, or at any time, to have been, or to be in Camden, or in the State of New Jersey. In view of the somewhat unusual situation presented by the undisputed facts in this case, it seems to me that the indictment is defective in making no reference to the residence or domicile of Plumley, but merely stating that he was "late of the city of Camden," an allegation which, when challenged, is not the equivalent of a statement of residence, and certainly not of residence at any particular time, or at the time when, in the indictment, relator deserted or it is asserted that he deserted his wife.

Finally, under the circumstances of this case, and in the light of the decisions, I feel warranted, and indeed impelled, to hold that the relator is not a fugitive from justice from the State of New Jersey. Moore on Extradition, page 887, refers with approval to the holding of the governor of Massachusetts in the famous Vinol Case, wherein the State of New York demanded the extradition of Vinol from Massachusetts, that in a proceeding, like the present, the flight is a question of fact, and the burden of proving flight is upon the state which asserts it, and it must be proved beyond a reasonable doubt; that to flee must be knowingly to go away from something which one fears, and necessarily implies consciousness of guilt; that if a person does wrong and goes away, it is to be presumed that it is his intention to escape prosecution for it; that there must be actual flight, caused by apprehension of danger, to justify extradition, and that the fact of flight as indicative of crime must be shown. It was held in the Vinol Case that the State of New York had not met these requirements, and that the person apprehended had, therefore, not been shown to be a fugitive from justice, and the governor of Massachusetts refused the demand of the State of New York for his extradition. Moore, also, refers to the case of Wyeth, in which Wyeth left Iowa, believing that he was legally divorced, went to Massachusetts

to live, after which he was in Iowa for a day or two, and it was held that he could not be extradited. If these principles are sound, as it seems to me they are, their application to the present case is obvious. Plumley was never a resident of New Jersey, did not become such by being in the state a few minutes, when he took his wife there, at her request, and clearly did not then leave the state conscious of guilt, or with the slightest intention of avoiding or evading its laws. He knew he had been defrauded by his wife, and her parents, and that he had already instituted a suit for the annulment of the marriage, at his residence and domicile, and that it would, undoubtedly, be declared void, as his wife acknowledged her wrong and requested to be taken back to her parents, and the outcome, in the form of a judgment of annulment, conclusively confirms the justice, lawfulness and correctness of his position. To hold, under these circumstances, all conceded, that the relator became or remains a fugitive from justice, is to do violence, alike to the fair, reasonable or legal meaning of the term, "fugitive from justice."

While I appreciate that equitable or personal meritorious considerations cannot govern or control the disposition of a legal question such as is here presented, it is, nevertheless, gratifying to note that justice, as well as the law, will be subserved in this case by a refusal to extradite the relator, and to subject him to financial loss, expense and annoyance involved in establishing his defense in the courts of New Jersey, far distant from his home, and in proving there the adjudicated wrong which has confessedly been done him by the woman whom he married, and by her parents. Plumley served his country faithfully and courageously in active service at the front, and won honors and decorations for bravery and meritorious conduct, for which his unfortunate matrimonial venture should not unnecessarily harass him. I am satisfied on the legal principles and considerations applicable to the case, and upon which my decision, alone,

is based, that the writ of habeas corpus should be sustained, and the relator discharged from custody, and an order to that effect may be entered.

Ordered accordingly.