J. Irwin Shapiro, J.
The State of South Carolina seeks to extradite the relator. He has obtained a writ of habeas corpus and the issues arising upon the return of that writ are here for determination.
*103 The relator, a minister, formerly resided in Charlotte, North Carolina, and pastored a church in York, South Carolina, for more than 25 years.
Prior to March 18, 1958 he had led an exemplary life, had never been convicted of a crime, and had been active as an integrationist and in other causes on behalf of the National Association for the Advancement of Colored People.
On March 18, 1958 the relator was operating an automobile in the City of York, State of South Carolina, and while doing so it collided at an intersection with an automobile being driven by one William S. Dickson, a white resident of York, South Carolina. Mr. Dickson, a man 80 years old, was instantly killed.
The relator was arrested and thereafter tried upon an indictment charging him with murder and reckless homicide.
Relator was found guilty of “ reckless homicide ” and was sentenced to serve three years in the South Carolina penitentiary.
The relator appealed to the South Carolina Supreme Court where he contended, by an assignment of error, that “ the testimony concerning speed of his automobile violated the South Carolina rule concerning such evidence since none of the witnesses identified the relator as the driver of the car which they claimed they had seen and none of them identified the car as the one involved in the accident”.
These and other contentions of the relator were rejected by the South Carolina Supreme Court as being without merit. As a consequence his conviction was affirmed. (State v. Cavers, 236 S. C. 305.)
Upon a petition for a rehearing, relator contended that the receipt of evidence contrary to the State Supreme Court’s rule violated the relator’s right of due process of law, protected by the 14th Amendment to the United States Constitution.
The petition for rehearing was denied by the South Carolina Supreme Court on May 21,1960.
The relator thereupon made application for a stay of sentence and a stay of remittitur, in order to apply for a writ of certiorari to the Supreme Court of the United States.
On or about the 4th day of December, 1958 and at the time the relator served his notice of appeal, from the judgment of conviction, to the South Carolina Supreme Court, he was required to and did post an appearance bond in the amount of $5,000. One Harvey Maners was the surety on the bond.
At the time the South Carolina Supreme Court denied the relator’s application for a rehearing in May of 1960, the relator was in the State of New York attending a church convention. He has since then failed to present himself to the appropriate *104 South Carolina authorities to begin serving the sentence imposed upon him, but has elected to remain in this State.
A petition for a writ of certiorari to the United States Supreme Court was filed with that court on August 22, 1960. It was denied on November 7, 1960. (Cavers v. South Carolina, 364 U. S. 886.)
The relator was arrested in this State at the request of the South Carolina authorities on January 11, 1961, eight months after the South Carolina Supreme Court had affirmed his conviction and approximately two months after the United States Supreme Court had denied his petition for a writ or certiorari.
The relator appeared in the Magistrates’ Court of the City of New York on January 12, 1961, at which time the case was adjourned to the next day and at that time was further adjourned to February 3, 1961.
On February 3, 1961 the Magistrate transferred the matter to the County Court of Queens County, where the relator was advised of his right to return voluntarily to the State of South Carolina or to apply for a writ of habeas corpus. He thereupon sued out the writ which initiated this proceeding (Code Crim. Pro., § 838).
In the Magistrates’ Court there were present not only the relator and his attorney but a Sheriff from South Carolina and his deputy. In the “ Sheriff’s Party ” was Harvey Maners, the surety on relator’s appearance bond. The “ Sheriff’s Party” followed the relator to the Queens County Courthouse where the relator appeared pursuant to the direction of the Magistrates ’ Court. The hearing in the County Court was thereupon adjourned.
Upon leaving the courtroom, the relator and his counsel conferred with Harvey Maners, at which time the relator was informed by Maners in the presence of counsel that if the relator (Cavers) could raise $5,000 to exonerate the bond, the entire matter would be dropped. He also allegedly said that it was he, Maners, who was interested in the relator’s return to the State of South Carolina and not the State itself. A tentative agreement was worked out and the parties dispersed. Apparently, by reason of certain incidents which thereafter occurred and which are not germane to this proceeding, nothing further was done in connection with the proposed agreement.
The relator now seeks to sustain the writ of habeas corpus obtained by him contending: “ (1) No crime was in fact committed in the State of South Carolina. (2) That he is a fugitive from injustice rather than a fugitive from justice. (3) That the State of South Carolina is in fact not acting in good faith, *105 (and) that this is an attempt to return the Relator to the State of South Carolina to satisfy a bail bond, a private claim and debt.”
To support his contention that “no crime was in fact committed in the State of South Carolina ” relator urges “ that the State of South Carolina did not have the right or power to proceed under a statute which clearly required a showing of recklessness and also to rely on a common law remedy requiring only a show of negligence in the event that the proof is insufficient to support a verdict under the statute.” He further argues that the trial court also erred when it did not require “ the State to elect between the common law and the statutory charge ” by reason of which “ it was impossible for the Relator to know the standard which was applied to his acts.”
This point is palpably without merit. The relator has been found guilty by a jury; that verdict was permitted to stand by the Trial Judge, and the judgment of conviction entered thereon was affirmed by the Supreme Court in the State of South Carolina, which upon an application for a rehearing adhered to its affirmance. In addition, as has been noted, certiorari was refused by the United States Supreme Court.
Under such circumstances, this court is foreclosed from inquiring into the propriety of the rulings made on the trial in the demanding State. Every one of the 50 States in these United States, being a sovereign power, has a right, within constitutional limitations, to formulate and adopt its own rules of procedure and evidence. "Whether in any case a trial court has committed error is for the Appellate Court of that particular State to determine (or if a Federal Constitution question be involved, for the United States Supreme Court), but no court in another State may sit as a reviewing tribunal. (Code Crim. Pro., § 849; People ex rel. Samet v. Kennedy, 285 App. Div. 1116.)
Once it is made to appear here (1) that the person sought to be returned is a fugitive from justice, (2) that a demand in due form has been made for his return and, (3) that he is either charged with an extraditible crime in the demanding State or has already been convicted of such a crime therein, this court may not embark upon any further inquiries. It is then constitutionally required to surrender him to the demanding State and it may not interfere with his return by the summary process of habeas corpus, upon speculation as to what Avill be or what should have been the result of a trial in the place where the Constitution provides for its taking place. (People ex rel. Higley v. Millspaw, 281 N. Y. 441 ; Drew v. Thaw, 235 U. S. 432 ; *106 People ex rel. Shurburt v. Noble, 4 A D 2d 649 ; People ex rel. Fong v. Honeck, 253 N. Y. 536.)
In the Higley case (supra) the court said (p. 445): “ There may be determined in this proceeding questions as to (1) whether the papers upon which the warrant was issued by the Governor of the asylum State are sufficient, (2) whether the indictment charges a crime under the laws of the State seeking the extradition, (3) whether the crime was committed in the demanding State under its laws, (4) whether the accused was in the demanding State on the day when the crime is alleged to have been committed, (5) the identity of the alleged fugitive, (6) whether the person sought to be extradited is a fugitive from justice (People ex rel. Corkran v. Hyatt, 172 N. Y. 176 ; Roberts v. Reilly, 116 U. S. 80, 95 ; Pettibone v. Nichols, 203 U. S. 192 ; Hogan v. O’Neill, 255 U. S. 52, 56 ; People ex rel. Plumley v. Higgins, 109 Misc. Rep. 328). We may not consider the question of the sufficiency of the indictment as a pleading (Hogan v. O’Neill, supra) nor the possibilities resulting from the trial (Drew v. Thaw, 235 U. S. 432) nor the merits of the defense to the indictment or the motive and purpose of the extradition proceedings (Drew v. Thaw, supra ; Smith v. Gross, 2 Fed. Rep. [2d] 507 ; certiorari denied, 267 U. S. 610 ; Matter of Bloch, 87 Fed. Rep. 981 ; Commonwealth v. Superintendent, 220 Penn. St. 401 ; Edmunds v. Griffin, 177 Iowa, 389).” (Italics supplied.)
In another and similar case, People ex rel. Kaufmann v. O’Brien (197 Misc. 1019, 1020), the court said: “ This is a summary proceeding1. We are not and cannot be concerned in this matter with the innocence or guilt of the relator.”
In People ex rel. Reid v. Warden of City Prison (63 N. Y. S. 2d 620) the relator had been convicted in the State of Florida. While he was serving his term in prison he escaped and came to the State of New York where he was arrested as a fugitive from the State of Florida. There, as here, the relator was a Negro “ and the argument was made that negroes are grossly discriminated against in Florida and other southern states ’ ’ and that therefore this State should not order his return to a jurisdiction where he would not be treated fairly. In answering that contention, and dismissing the writ of habeas corpus, the court said:
*‘ Obviously, the denial of a fair and impartial trial is reversible error on appeal which is the regular and proper method of presenting that question for review. Powell v. State of Alabama, 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527 ; Pierre v. State of Louisiana, 306 U. S. 354, 59 S. Ct. 536, *107 83 L. Ed. 757 ; Smith v. State of Texas, 311 U. S. 128, 61 S. Ct. 164, 85 L. Ed. 84 ; Chambers et al. v. State of Florida, 309 U. S. 227, 60 S. Ct. 472, 84 L. Ed. 716 ; Canty v. State of Alabama, 309 U. S. 629, 60, S. Ct. 612, 84 L. Ed. 988 ; White v. State of Texas, 309 U. S. 631, 60 S. Ct. 706, 84 L. Ed. 989, also rehearing denied 310 U. S. 530, 60 S. Ct. 1032, 84 L. Ed. 1342. These eases of the United States Supreme Court each presented a question involving the due process clause of the Federal Constitution and it would seem that in each instance judgment was reversed and the cause was remanded for further proceedings to the court of original jurisdiction.
“ It can hardly be said, and no authority has been presented to support any suggestion, that it is either regular or proper to permit a person convicted of a crime and sentenced to imprisomnent in one state to revietv the conviction through the medium of habeas corpus in the courts of another state to which such person has escaped.” (Italics supplied.)
In Drew v. Thaw (235 U. S. 432, 439, supra) Mr. Justice Holmes said: “In extradition proceedings, even when as here a humane opportunity is afforded to test them upon habeas corpus, the purpose of the writ is not to substitute the judgment of another tribunal upon the facts or the law of the matter to be tried. The Constitution * * * peremptorily requires that upon proper demand the person charged shall be delivered up to be removed to the State having jurisdiction of the crime.” (Italics supplied.)
The warrant issued by the Governor of this State directing the relator’s return to the demanding State recites that he is a fugitive from justice, having been convicted of committing a crime in the State of South Carolina, and that conclusion may not be interfered with or overthrown by this court except for legal cause none of which, under the applicable decisions, exists in this case. (Hogan v. O’Neill, 255 U. S. 52 ; People ex rel. Corkram v. Hyatt, 172 N. Y. 176, 189.)
The second point urged by the relator is ‘1 that he is a fugitive from injustice rather than a fugitive from justice. ’ ’
A careful reading of the South Carolina trial record persuades me that the facts therein contained could not act as the foundation for a verdict of guilt in any court in this State but that is not the question here.
It is also fairly apparent that the color of the defendant’s skin had no little to do with his conviction.
The application of different standards of justice — one for white defendants and another for Negroes—makes a mockery of the very principles upon which this Government was founded *108 and which have made it the leading exponent of democracy in all the world.
Under the circumstances, if the question before me was the doing of pragmatic justice, I would sustain the writ and free the relator. But however I may personally feel about the factual unfairness of the verdict, the South Carolina Supreme Court has on two occasions affirmed its legal fairness. In addition the United States Supreme Court has judicially determined that the rights of the relator have not been violated under the Federal Constitution.
This court’s hands are therefore tied. It may not substitute its own ideas for those of the regularly constituted courts of the demanding State or of the United States Supreme Court.
In this connection the distinction between the powers of the executive branch of the Government and its judicial branch in considering a demand for extradition is vital. In the case of the former, there is on rare occasions room for the exercise of discretion, but in the case of a court there is no discretionary power to be exercised. Once the formal requisites set forth in the extradition statutes are found to be in order, the court has no choice but to order the extradition to proceed.
The third and last point urged by the relator is “ that the State of South Carolina is in fact not acting in good faith (and) that this is an attempt to return the Relator to the State of South Carolina to satisfy a bail bond, a private claim and debt.”
He points out that subdivision I of section 853 of the New York Uniform Criminal Extradition Act requires that an application by the Governor of the State of New York for the return to this State from another State of a person charged with the commission of a crime must contain a recital to the effect that “ in the opinion of the [state] * * * attorney or attorney-general the ends of justice require the arrest and return of the accused to this state for trial and that the proceeding is not instituted to enforce a private claim.” (Italics supplied.)
South Carolina has not adopted the Uniform Criminal Extradition Act and therefore the requirements therein contained are not binding upon it, but we will assume arguendo that this State would require a demanding State to make the same legal and factual showing that this State must make when it seeks to extradite a fugitive to this State and that therefore, if applicable, the State of South Carolina must show, “ that the [extradition] proceeding is not instituted to enforce a private claim ”. Based upon the provisions of the New York Uniform Criminal Extradition Act and its application to the demand of *109 the State of South Carolina for the extradition of the relator comes the contention by him that the willingness of Maners to accept a money settlement in satisfaction of the relator’s obligation on his defaulted appearance bond is proof of the fact that the prosecution by the State of South Carolina is “to enforce a private claim This contention by the relator overlooks two facts — first, that the obligation of the relator to his bondsman for the debt incurred by the latter through the relator’s failure to surrender pursuant to the terms of the bail bond is a personal one and is separate and distinct from the relator’s obligation to the State of South Carolina to serve the term of imprisonment imposed upon him by the South Carolina Court. The second and more fundamental point, however, is the fact that this is not a case where the relator is sought to be returned to the demanding State to face a charge that he has committed a crime, but is rather a case where he is sought to be returned to the demanding State after he has been convicted there of the commission of a crime.
The distinction is crucial. In drawing the Uniform Criminal Extradition Act it is obvious that the codifiers thereof, and the States which adopted it, realized that one could be charged with a crime, and extradition sought, by a simple affidavit or complaint without even the necessity of an indictment and by the mere appearance before some local subordinate official, and that they therefore sought to make sure that no one merely charged with the commission of a crime and sought to be extradited was being made the victim of a complainant’s desire “ to enforce a private claim ”,
However, relator’s reliance upon subdivision I of section 853 of the Uniform Criminal Extradition Act is misplaced. That paragraph deals only with a person charged with the commission of a crime and not with one already convicted. In the case of one already convicted of a crime, he has presumably had a legallv fair trial in which the State has laid bare its proof and established his guilt beyond a reasonable doubt. In such a ease there is no longer room for inquiry or conjecture that the extradition is sought “ to enforce a private claim ” because there has been a judicial finding of guilt against the defendant and in favor of the State.
The enactors of the Uniform Criminal Extradition Act doubtless recognized that vital distinction, for in subdivision II of section 853, dealing with persons already convicted, there is found no counterpart of the provision in subdivision I requiring an allegation that the extradition proceedings are “ not instituted to enforce a private claim ”.
*110 •' It should also be noted that there is no proof in the record that any official of the State of South Carolina with the requisite degree of authority to consent to the withdrawal of the demand for extradition participated in the settlement discussion between Maners, the bondsman, and the relator.
Under the circumstances the court is constrained to overrule this third and last point put forth by the relator.
It is a case like this, where all the equities seem to be on the side of the applicant, that tries the soul of a Judge who must perforce do his sworn duty within the ambit of the decided cases even though it means being a legal participant in the commission of what to him seems to be a factual injustice.
The writ of habeas corpus is therefore dismissed and the relator is ordered to be turned over to the authorities of the demanding State. If the relator should desire to test the validity of this court’s determination by an appeal, the execution of the direction that he be turned over to the authorities of the demanding State will be stayed for 10 days to enable the relator to appeal to the Appellate Division and to apply to that court for a further stay.