*800 OPINION OF THE COURT
Kenneth K. Rohl, J.
Ordered, that James Harris’ petition for a writ of habeas corpus permanently enjoining his extradition from the State of New York to the State of Alabama is, in all respects, denied; and it is further
Ordered, that James Harris’ motion to vacate his judgment of conviction after plea to indictment No. 220/90 and for dismissal of that indictment (CPL 440.10) is granted nunc pro tune to July 1, 1991 for the reasons set forth on the record in open court on that date; and it is further
Ordered, that the People’s motion to reargue the court’s vacatur of James Harris’ plea to indictment No. 220/90 and dismissal of such is granted and upon reargument, the People’s motion is denied; and it is further
Ordered, that execution of the warrant signed by Hon. Mario M. Cuomo on June 4, 1990 directing James Harris’ extradition is stayed for 30 days or to the filing of an appeal from this order, whichever first occurs. James Harris is released in his own recognizance during the interval of this court’s stay. If James Harris files an appeal he shall make any further bail application to that appellate court (64 NY Jur 2d, Habeas Corpus, § 128; People ex rel. Meeker v Baker, 139 App Div 471; Matter of Barlow, 141 App Div 640; People ex rel. Drake v Oslwyn, 51 AD2d 240).
James Harris (Harris) petitions for a writ of habeas corpus asking the court to vacate an extradition warrant signed by New York State Governor Mario M. Cuomo on June 4, 1990 that returns him to Alabama to serve the remainder of a sentence imposed by that State in 1962 and from which he escaped from prison in 1964.
Harris was born in Montgomery, Alabama, on May 16, 1945. By age 14, he had apparently been charged with various burglaries and remanded to the Industrial School for Boys, from which he thereafter escaped. In May 1962, he was again arrested for a series of burglaries, placed in juvenile detention and again escaped. He was arrested several months later and on November 9, 1962 indicted for burglary in the first degree (Alabama indictments Nos. 701, 702).
On November 27, 1962, Harris (then aged 17) withdrew previously entered pleas of "not guilty” and "not guilty by reason of insanity,” pleaded "guilty” to the felonies of burglary in the nighttime (indictment No. 701) and burglary *801 (indictment No. 702) and was immediately sentenced to two definite terms of incarceration of 10 years and 5 years consecutive and to be served in the Alabama State Penitentiary.
Some 19 months later, on June 22, 1964, Harris escaped from his prison work detail while unloading slag from a boxcar at the Eufaula Freight Depot. He was thereafter sentenced, in absentia, to an additional 6 years consecutive. This was his third escape.
His flight took him to Brentwood, Suffolk County, New York, where he remained free until March 13, 1967 when he was arrested on an Alabama fugitive complaint. He refused extradition and was incarcerated in New York City pending Alabama’s filing a formal requisition pursuant to the Uniform Criminal Extradition Act.
On April 7, 1967, Alabama Governor Lurleen B. Wallace forwarded a formal requisition request to then New York Governor Nelson A. Rockefeller. After spending 90 days in jail, the fugitive charges were dismissed on June 24, 1967 upon Governor Rockefeller’s failure to timely act on the requisition. Harris returned to Brentwood.
On July 19, 1967, Governor Rockefeller signed the extradition warrant. However, no further action was taken until May 25, 1970 when Harris was finally arrested in Suffolk County, New York. He was admitted to bail and on October 31, 1970 petitioned the Supreme Court, Suffolk County, for a writ of habeas corpus. The case was assigned to Justice William Geiler and adjourned some 12 times to December 16, 1971. During the pendency of the court proceedings, the Suffolk County Human Rights Commission and Brentwood residents petitioned Governor Rockefeller to recall his warrant — pointing to Harris’ youthfulness at the time of the crimes, the length and severity of the consecutive sentences and allegations of beatings while assigned to the work gang. Rockefeller’s office contacted Alabama regarding the possibility of a compromise whereby Harris would complete his sentence under parole supervision in New York. Alabama declined.
On December 15, 1971 Rockefeller recalled his warrant upon a finding that a parole investigation "showed Harris had been in New York for about seven years and in that time got married and got a job and hadn’t engaged in any criminal wrongdoings. It’s a case where a man rehabilitated himself, put down family roots and won the respect of his employer and community.” A Rockefeller spokesperson added "there *802 probably would be no enhancement of the ends of human justice by further incarceration.”
The Suffolk County District Attorney’s office advised the court of Governor Rockefeller’s decision on December 16, 1971 and moved to dismiss the petition for a writ of habeas corpus. The motion was granted and Judge Geiler marked the file "Writ Sustained.” No appeals to New York’s courts were taken and no other proceedings were commenced in the Federal courts.
The threat of extradition removed, Harris’ rehabilitation faltered and less than one year later, he was indicted for robbery in the first degree (two counts); grand larceny in the third degree (three counts); assault in the first degree (two counts); reckless endangerment in the first degree (one count) and possession of a weapon as a felony (one count). On October 3, 1973, Harris pleaded guilty to one count of robbery in the second degree (in satisfaction of one count of robbery in the first degree) and went to trial on the remainder of the charges. He was convicted of robbery in the first degree (the remaining count), assault in the first degree and felony possession of a weapon and ultimately sentenced to consecutive terms of imprisonment aggregating 37 years.
After serving approximately six years, he was paroled in 1978. He was again arrested in July of 1979 for criminal possession of stolen property in the second degree and burglary in the third degree. Those charges were dismissed three months later and Harris then went on to live the next decade in relative obscurity from both the press and law enforcement.
On January 20, 1990 Harris again emerged in the criminal justice system when he was arrested in Suffolk County, New York, for criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree, class B felonies carrying maximum prison terms of 8 Vs to 25 years. Plea bargain discussions ensued during which Harris’ fugitive status was considered and to which this court opined that Governor Rockefeller’s withdrawal of the extradition warrant in 1971 had apparently concluded that matter. Believing himself safe from extradition, Harris pleaded guilty on April 12, 1990 to a single count of attempted criminal sale of a controlled substance in the third degree in full satisfaction of all charges and was sentenced on June 8, 1990 to an indeterminate term of imprisonment of 1 to 3 years.
*803 However, unbeknownst to both this court and Harris, in May 1990, Alabama sent a new extradition request to New York Governor Mario M. Cuomo. On June 4, 1990, in Albany, New York (four days before his sentencing in Suffolk County), Governor Cuomo signed the extradition warrant ordering his arrest. Neither Harris, his attorney nor this court had any knowledge of the Governor’s action prior to the sentencing. Nor is there any evidence that the Suffolk County District Attorney’s office had knowledge prior to sentencing.
Harris was remanded to the State correctional facility, Attica, Wyoming County, New York, on June 21, 1990. Thereafter, the extradition warrant was received in Suffolk County and on June 26, 1990, it was returned to Albany with a letter advising that Harris had been turned over to State custody. Execution of the extradition warrant was held in abeyance pending his release.
Harris was given a parole date of January 17, 1991. On January 10, 1991, one week before his parole release the extradition warrant was sent from Albany to Allen L. Cap-well, Wyoming County Sheriff, for execution. On January 17, 1991, Harris was paroled, immediately arrested on the Governor’s warrant and rejailed at Attica where he remained until April 24, 1991 when he was assigned a Public Defender and arraigned on the warrant before Hon. Mark H. Dadd, Acting Supreme Court Justice, Supreme Court, Wyoming County, New York. Harris remained in Attica until May 3, 1991, when he was transferred from State custody to the Wyoming County Jail. Refusing extradition, Harris petitioned the Supreme Court, Wyoming County, for a writ of habeas corpus on May 15, 1991.
On May 31, 1991 Harris moved before the Supreme Court, Suffolk County, to vacate his 1990 judgment of conviction (indictment No. 220/90) pursuant to CPL 440.10 upon a claim that had he known of the pending extradition he would not have entered the plea and for an order permanently enjoining execution of the extradition warrant.
Released from custody in his own recognizance by Judge Dadd, Harris appeared before this court on July 1, 1991 at which time his motion to vacate his judgment of conviction was granted — the court finding that had he known of the pending extradition at the time of the plea he would not have done so. In addition, indictment No. 220/90 was dismissed in the interests of justice pursuant to CPL 440.10 (4) upon a *804 finding that Harris had already served the mandated minimum term of imprisonment on the vacated plea.
Harris’ request to permanently enjoin his extradition was addressed in a memorandum decision and order dated July 11, 1991, which held that the "orderly administration of justice and the rule of Colson v Pelgram, 259 NY 370 require that all issues pending in the Supreme Court, Suffolk County, with regard to the validity of Harris’ extradition be and the same hereby are remitted to the Supreme Court, Wyoming County for adjudication.”
On July 18, 1991, Harris moved in Wyoming County to change venue of this proceeding back to Suffolk County and on July 24, 1991, Judge Dadd granted that application.
Harris is not incarcerated at this time.
He contends the writ should be granted for various reasons, including that it would serve the interests of justice; it is a unique case of first impression; the original Alabama sentence is unjust; Governor Rockefeller’s withdrawal of his warrant in 1971 and the subsequent action of the court in sustaining his writ is a final determination and that he is not a fugitive and (1) is the law of the case; (2) res judicata and (3) binding on all successive New York Governors; as a result of the passage of time loches should apply; as a result of Judge Geiler’s sustaining the writ he has been placed in double jeopardy; he cannot obtain due process in Alabama as they are being vindictive in pursuing the warrant and are "trying to reverse the Civil War” through him; and that the documents underlying Alabama’s request are not in proper form, including claimed backdating. Finally, he claims that any one of the above, taken either alone or together forms the extraordinary circumstances exception set forth in People ex rel. Little v Ciuros (44 NY2d 825), People ex rel. Strachan v Colon (77 NY2d 499) which permits the courts of New York to enjoin execution of the warrant.
It is well established that, except in the rarest of cases, once the Governor of the asylum State has ordered extradition " 'a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding State; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive’ ” (People ex rel. Strachan v Colon, supra, at 502; Michigan v Doran, 439 US 282).
*805 Thus, the threshold question is whether these requisites have been satisfied. Then, and only then can the court consider whether this is that rare case within the unusual circumstance exception. (People ex rel. Little v Ciuros, supra.)
Harris concedes he is the person named in the fugitive warrant; has been convicted of robbery in the demanding State and escaped from that State’s prison.
The documents demanding Harris’ extradition must be examined to see if they evidence Harris’ presence in Alabama at the time the crimes were committed and contain (a) authenticated copies of the indictments, judgment of conviction or the sentence imposed and (b) a statement by the executive authority that Harris escaped from confinement and is a fugitive (CPL 570.08).
The papers presented to Governor Cuomo contained
(1) Alabama Governor Guy Hart’s original request for extradition and his authorization to Betty Taylor and/or her duly authorized agents to take custody of Harris from New York both dated May 18, 1990, and
(2) Betty Taylor’s (Director Central Records Office, Alabama Department of Corrections) original sworn statement dated May 2, 1990, that Harris escaped custody on June 24, 1964 while serving a sentence of imprisonment, and
(3) Betty Taylor’s sworn statement dated May 2, 1990 that Harris has refused to waive extradition;
(4) Betty Taylor’s sworn statement dated May 2, 1990 that the annexed are authentic copies of the files in the office of the Board of Corrections, to wit:
(a) "Copias” warrant to arrest Harris for burglary, signed by John R. Matthews on November 9, 1962
(b) Transcripts of Harris’ pleas to Alabama indictments Nos. 701 and 702, and
(5) Original cover letter of Morris L. Thigpin (Commissioner, Alabama Department of Corrections) dated May 2, 1990 addressed to the Suffolk County Police Department, Fugitive Squad, enclosing a fugitive warrant, fingerprints and photograph of Harris, and
(6) Original signed fugitive warrant of Morris L. Thigpin dated May 2, 1990 stating Harris was sentenced to the Alabama State Penitentiary for 15 years and that he escaped therefrom, and
(7) "Mug” shots and fingerprints of Harris, and
*806 (8) Two certifications by Debra P. Hackett, clerk, and Charles Price, Judge, dated February 21, 1990 certifying the authenticity of annexed copies of Alabama indictments Nos. 701 and 702, and
(9) Copies of indictments Nos. 701 and 702.
These documents taken together satisfied the requirements of CPL 570.08 and were legally sufficient to support Governor Cuomo’s decision to sign the extradition warrant.
Harris’ allegation that the Thigpin fugitive warrant was back-dated as evidenced by a copy of an amended warrant sworn to by Betty Taylor is a red herring. The amended warrant merely reflects that Harris was not only originally sentenced to 15 years, but also to an additional 6 years for escape and that he is in New York and not an "unknown” State. A handwritten note "1964; 12/1970 Dismissed” is clearly an internal notation.
In any event, this amended fugitive warrant was not before Governor Cuomo when he signed the extradition. Any discrepancies between it and the Thigpin warrant are de minimis and do not change the fact of Harris’ escape. Finally, this amended warrant is clearly not back-dated. It is just what it says it is, "amended.”
"A fugitive from justice is a person who is (1) suspected of or has been convicted of committing a crime; (2) sought by the jurisdiction so that the jurisdiction may subject the person to its criminal justice system, and (3) has left the jurisdiction and is found within the boundaries of another” (Gee v State of Kansas, 912 F2d 414, 418; People ex rel. Higley v Millspaw, 281 NY 441; Roberts v Reilly, 116 US 80). Whether a person is a fugitive from justice is to be determined by the Governor (CPL 570.10) and is conclusive in a habeas corpus proceeding unless clearly proven erroneous (People ex rel. MacArthur v Warden, 120 Misc 330, affd 205 App Div 650; Matter of Edelbaum v Cuomo, 122 Misc 2d 1029).
Harris does not contest his conviction and escape. Rather, he contends that Rockefeller’s decision to withdraw the warrant in 1971 is a final adjudication of his fugitive status and is the law of the case.
The sequence of events in 1970-1971 establishes that (1) then Governor Rockefeller issues the extradition warrant; (2) Harris seeks a writ of habeas corpus to prevent extradition; (3) Governor Rockefeller reverses his decision and withdraws the warrant; (4) the Supreme Court sustains the writ; and (5) no *807 other actions ensue until 1990-1991 when Alabama again seeks extradition and the instant proceeding commenced.
Extradition is a purely ministerial act mandated by both Federal and State law (People ex rel. Strachan v Colon, supra; Puerto Rico v Branstad, 483 US 219) for the purpose of precluding "any state from becoming a sanctuary for fugitives from justice of another state” (Michigan v Doran, supra, at 287).
Upon the requisite showing, a Governor has an absolute duty to order extradition (Puerto Rico v Branstad, supra). However, as the law existed in 1971 if the Governor refused to do so, or where as here the Governor withdrew his warrant, there was no means to compel performance (People ex rel. Higley v Millspaw, supra; Kentucky v Dennison 24 How [65 US] 66).
Insofar as Governor Rockefeller was bound to perform a ministerial act and order extradition, his subsequent withdrawal of his warrant in 1971 was clearly an unauthorized act. However, under Millspaw and Dennison (which relator correctly argues is the law to be applied) no means existed in 1971 to challenge that decision in either State or Federal court.
The issue is whether the court’s 1971 sustaining the writ of habeas corpus was a final adjudication granting Harris non-fugitive status. If it was, well-established principles of res judicata and collateral estoppel bar a subsequent relitigation of that issue. The burden is on the party seeking to assert claim preclusion to establish that the issue had been heard and determined in his favor in the prior proceeding such " 'as to constitute an estoppel upon a reinvestigation of the same question’ ” (Matter of McCrary v Scully, 153 AD2d 629, 629-630).
The 1971 habeas corpus proceeding was predicated upon a claim "that the issuance of the Governor’s warrant in July of 1967 constituted an abuse of the discretion permitted by Section 831 of the Code of Criminal Procedure and resulted in the issuance of a defective warrant leading to the illegal detention of your petitioner.”
This argument was based upon a claim that the penultimate phrase of former section 831 provided that after appropriate investigation the Governor make a discretionary decision as to "whether he [the person demanded] ought to be surrendered”. (Emphasis added.)
*808 In furtherance of that claim, Harris’ then attorney said that Harris was "not attacking the request for rendition by the State of Alabama. We are attacking the issuance of the warrant by the Governor of the State of New York.”
Thus, once Governor Rockefeller reversed his original decision and withdrew the warrant, Harris’ arguments were rendered moot. The District Attorney’s so advising the court and the court’s ultimately marking the file "Writ Sustained” was no more than the ministerial act of removing the petition from the court’s calendar. To the extent that it represents any legal determination, it is one of law not fact, to wit, that section 831 is discretionary and not mandatory.*
No factual adjudication was ever made regarding the sufficiency of Alabama’s requisition including Harris’ fugitive status (which he conceded). Moreover, the refusal of a Governor to extradite is not an adjudication on the merits as bars a renewal demand and subsequent grant of a warrant of extradition by that Governor’s successor (People ex rel. MacArthur v Warden, supra).
Nor does the court’s 1971 action in marking the case "Writ Sustained” constitute double jeopardy — there was nothing remotely resembling a trial in that extradition proceeding. In addition, since an extradition proceeding does not decide issues of guilt for offenses committed in the demanding State, jeopardy cannot attach (Matter of McCrary v Scully, supra; People ex rel. Cook v Gavel, 51 AD2d 641, lv denied 38 NY2d 709).
Accordingly, I find that Governor Cuomo properly determined that Alabama’s requisition was in proper order and he performed a mandated ministerial duty in signing the warrant. Indeed, had he refused to do so, he could now, in 1990-1991 be compelled to perform that duty pursuant to Puerto Rico v Branstad (supra [1987]) which specifically overruled so much of Kentucky v Dennison (supra) as had held for over 125 years that there was no means of compulsion.
Except in the rarest and most egregious of circumstances, the courts of an asylum State are obliged to respect "the due process potentiality and renderings” of a demanding State (People ex rel. Strachan v Colon, supra). Prospective due process claims may not be invoked in the courts of the asylum State to prevent extradition except upon movant’s showing by *809 clear and convincing evidence that effective access to State and Federal courts in the demanding State is unavailable or that even with access an irreparable miscarriage of justice will result (supra; People ex rel. Little v Ciuros, supra). Speculations, including claims of political motivation, are not permissible and the "asylum court cannot arrogate jurisdiction to itself’ to decide such claims (People ex rel. Strachan v Colon, supra, at 505; California v Superior Ct, 482 US 400).
Harris claims he cannot obtain due process, in Alabama since that State is being vindictive and "trying to reverse the Civil War” by seeking his return; his extradition will not further justice; and that the passage of some 20 years requires denial on the grounds of loches.
Not one scintilla of proof is before this court that Harris cannot obtain due process in the courts of Alabama or in the Federal courts in the Fifth Circuit (if such becomes necessary) (Sweeney v Woodall, 344 US 86). To hold otherwise would result in sheer speculation and an impermissible determination that he could not receive fair treatment in any but New York’s courts (People ex rel. Neufeld v Commissioner of N. Y. City Dept. of Correction, 132 AD2d 720, affd 71 NY2d 881; People ex rel. Cavers v Grasheim, 28 Misc 2d 102, affd 13 AD2d 999) and accede to his clear attempt to have these issues resolved in what he perceives to be the most favorable forum.
Likewise, there is no mechanism in the field of extradition law which empowers a court to invalidate a warrant in the interests of justice except upon clear and convincing evidence that to do otherwise would result in gross irreparable harm (People ex rel. Strachan v Colon, supra). Alabama’s refusal to negotiate a settlement with Harris which would allow him to complete his sentence under parole supervision in New York does not satisfy the requisite showing. Alabama has the absolute right to justly enforce its own criminal laws and to reserve to itself decisions on relator’s claims (including any that his original sentence was excessive) (see, California v Superior Ct., supra).
The seminal case on loches is Strachan v Colon (941 F2d 128), in which Florida sought to extradite Strachan from New York for a murder he allegedly committed 44 years ago. Strachan argued that due process would be unavailable since more than four decades had passed and "witnesses are gone and memories lost.” The United States Court of Appeals for the Second Circuit held that this issue is to be resolved by the demanding State stating (supra, at 131-132):
*810 "The mandatory nature of the Extradition Clause also serves the greater purpose * * * of making one whole nation out of numerous states that had, until the ratification of the Constitution, largely been independent political entities, while preserving the federal nature of the United States by allowing individual states to enforce their own criminal laws without being subject to review by sister states.
"Essential to the proper functioning of the Extradition Clause is its summary and mandatory nature that precludes inquiry into probable cause, political defenses, or potential constitutional violations. To make an exception and permit the defense of loches to be examined in any asylum state would defeat these express purposes of the Extradition Clause * * *
"Nothing in the Constitution or in the applicable federal statute indicates that a fugitive has a right to 'speedy extradition’ or that there exists a statute of limitations for extradition. The cases petitioner refers to regarding a state’s diligence in tracking down a suspect involve the right to a speedy trial, not the Extradition Clause. We therefore hold that this is not the appropriate forum to consider the argument that loches should bar petitioner’s extradition to Florida.” (Citations omitted.)
Harris argues his is a more compelling case for New York’s courts to apply loches and attempts to distinguish Strachan (supra) by claiming that his is a posttrial case whereas the rule enunciated by the Second Circuit is limited to cases where loches is raised as a pretrial defense.
The court disagrees. Laches, whenever raised, is to be litigated in the demanding State’s courts. To hold otherwise would impliedly result in a finding that if a person evades serving a legally imposed sentence by a sister State for a long enough period of time he can avoid its service altogether.
Even when all of relator’s arguments are considered together, the court is constrained to sustain the warrant. Each, every and all claims raised can be litigated in Alabama courts or in the Fifth Circuit.
James Harris’ petition for a writ of habeas corpus permanently enjoining his extradition from the State of New York to the State of Alabama is, in all respects, denied.
In light of this holding the court again finds that James Harris would not have pleaded to indictment No. 220/90 had he timely known of his prospective extradition. The People’s *811 motion to reargue is granted and upon reargument it is, in all respects, denied.
To the extent set forth in the fourth decretal paragraph, execution of the warrant of extradition is temporarily stayed.

 Clearly, the determination would not be upheld under the existing law and would not be binding on any other New York court.